Chad **SERVENTI**, a minor, by his Mother, Janet Heierbacher, and Kevin Whyno, a minor, by his Mother, Dorothy Whyno, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**BUCKS TECHNICAL HIGH SCHOOL,** Pennsylvania Department of Education, & Charles B. Zogby in official capacity as Secretary of Education, Defendants.

No. 02–CV–6936.

United States District Court, E.D. Pennsylvania.

Nov. 29, 2004.

Janet F. Stotland, Kelly L. Darr, Education Law Center, Rachel Mann, Disabilities Law Project, Leonard Rieser, Philadelphia, PA, for Plaintiffs.

Ellis H. Katz, Sweet, Stevens, Tucker & Katz LLP, New Britain, PA, Beth Anne Smith, Office of Attorney General, Philadelphia, PA, for Defendants.

### *MEMORANDUM AND ORDER*

ANITA B. BRODY, District Judge.

Currently before me is the Joint Motion for Final Approval of the Proposed Settlement in this class action for declaratory and injunctive relief. In August 2004, I certified plaintiff class for settlement purposes, preliminarily approved the proposed settlement agreement, and issued an order detailing the requirements for notice to the class and scheduling the fairness hearing for November 18, 2004. For the reasons set forth below, this motion is granted.

## I. BACKGROUND

*Plaintiffs' Claims of Discrimination*

Plaintiffs Chad Serventi ("Serventi") and Kevin Whyno ("Whyno") are two students with learning disabilities who were denied admission to the Bucks County Technical High School ("Bucks Technical"). (Compl. at 1.) Serventi and Whyno filed this class action lawsuit in August 2002, alleging that Bucks Technical was discriminating against students who need learning support classes by denying them admission to the school, limiting their choice of vocational programs, and/or failing to accommodate their disabilities in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794. (*Id.* at 13–18.) Plaintiffs also alleged that the Pennsylvania Department of Education ("PDE") and Secretary Vicki Phillips violated the same laws by providing substantial assistance to Bucks Technical and by failing to provide the plaintiffs with equal access to public secondary vocational education. (*Id.*) Plaintiffs sought declaratory and injunctive relief on behalf of themselves and a proposed class of similarly situated students. (*Id.* at 18–19.) Defendants denied the allegations and originally opposed Plaintiffs' motion for class certification.

Since 2000, Bucks Technical has been a comprehensive high school, meaning that students attend Bucks Technical full time and take all of their academic as well as vocational/technical courses there. (Compl. at 7.) Serventi and Whyno alleged that, since it became comprehensive, Bucks Technical has been denying admission to students who need learning support classes for academic subjects. (*Id.* at 11.) Bucks Technical denied this allegation. (Def. Buck County's Ans. to Compl. at 5.) Plaintiffs alleged that Bucks Technical was denying admission to students on the basis of their reading and math levels without any individualized determinations of whether the students could benefit from the school. (Compl. at 11.) Bucks

Technical admitted this, but argued that the policy was not discriminatory. (Def. Buck County's Ans. to Compl. at 4–5.) After some discovery, plaintiffs also alleged that Bucks Technical followed a discriminatory policy that as long as a student remained in a special education classroom for any academic subject, that student would not be permitted to attend any vocational program other than the Hotel/Fast Food Services and Building Trades/Maintenance programs. (Mot. to Amend Class at 2–3.)

*Certification of Settlement Class*

Plaintiffs Serventi and Whyno filed a motion for class certification in August 2002 which defendants opposed. A class certification hearing was held in May 2003. Serventi and Whyno then moved to amend the class definition, which defendants also opposed. After they parties reached a proposed settlement agreement, they jointly moved for certification of a settlement class and preliminary approval of the proposed settlement. This motion was granted without any formal findings on the record as to how the class satisfied the requirements of Federal Rules of Civil Procedure 23(a) and (b). For the reasons set forth below, *see infra* Part II.A., I find that the requisites of Rule 23 for class certification have been met.

*The Settlement Agreement*

In February 2004, after extensive discovery and after named plaintiffs were admitted to the program of their choice in Bucks Technical, the parties signed a settlement agreement in which Bucks Technical agreed to the policy changes that plaintiffs requested.[1] Under this agreement, Bucks Technical has agreed to adopt the following basic policies: (1) it will not deny admission to any student on the basis of that student's reading or math grade level, or on the basis that the student needs a learning support classroom for one or more academic subjects; (2) Bucks Technical will offer learning support classrooms for academic subjects to students in all vocational programs, if called for in the student's Individualized Education Program

---

**1.** Because the agreement with Bucks Technical provides the relief to class plaintiffs that Serventi and Whyno have been seeking, Serventi and Whyno agreed to voluntarily dismiss the claims against PDE, without prejudice to the class. (Pl.'s Mem. in Supp. of Mot. for Final Approval of Settlement Agreement at 4–5.)

(IEP); and (3) Bucks Technical will allow its students with disabilities to participate in the vocational programs of their choice, unless the student's IEP team (with the student's home school district having final decision-making power) determines that the student would not benefit from the program, even with accommodations. (Settlement Agreement at 2–3.)

Bucks Technical has already taken the following steps, which were also part of the agreement: (1) it notified and invited all students who were denied admission for the 2002–2003 or 2003–2004 school years because of learning disabilities to reapply for admission to the school on a priority basis; (2) it notified all students who were currently attending its Hotel/Fast Food Services or Building Trades/Maintenance programs that they could switch to different vocational programs; and (3) it notified officials at the six contributing school districts of Bucks Technical's new admission policies under the settlement agreement. (*Id.* at 4–6.) Bucks Technical has also agreed to provide certain data to PDE about student admissions to Bucks Technical every June and September for the duration of the agreement. (*Id.* at 6–7.) Under Serventi's and Whyno's separate agreement with PDE, this data will be given to plaintiffs' counsel.[2]

The settlement agreement is to remain in effect for three years and plaintiffs and class members agree to release all claims that were brought or could have been brought in this lawsuit "from the beginning of the world until the date of the first admission decision by BCTHS (Bucks Technical) for applicants for the 2007–2008 school year." (*Id.* at 7–9.) Under the agreement, Bucks Technical has paid plaintiffs' $80,000 in attorneys' fees.[3] (*Id.* at 10.)

## II. DISCUSSION

### A. Certification of Settlement Class

■ Just as with a non-settlement class, a district court must determine whether the settlement class satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *In re General Motors Corp. Pick–Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 794 (3d Cir.1995). Rule 23(a) lists the following prerequisites to a class action:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*Id.*

Federal Rule of Civil Procedure 23(b) provides that:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied and in addition: ... (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole...."

*Id.*

The settlement class in this case consists of:

> All students who now or in the future: 1) are eligible for public high school education in the school districts served by BCTHS [Bucks Technical]; 2) have an identified need for a learning support classroom for one or more of their school subjects as a result of a disability; and 3) are interested in attending Bucks Technical or are attending Bucks Technical.

(Settlement Agreement at 1–2.)

■ The settlement class meets the numerosity requirement of Rule 23(a). The

---

2. In August 2004, I ordered, pursuant to a joint stipulation of voluntary dismissal, that the named plaintiffs' claims against PDE be dismissed with prejudice and the class members' claims against PDE be dismissed without prejudice.

3. PDE has paid plaintiffs $20,000 in attorneys' fees under a separate agreement so that the total fee received by plaintiffs' attorneys is $100,000. (Pl.'s Mem. in Supp. of Mot. for Final Approval of Settlement Agreement at 13.)

Third Circuit has held that "[n]o minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001). Evidence submitted at the May 5, 2003 class certification hearing indicated that the number of class members from one school district in one school year alone met the numerosity requirement. Pat Romano, a witness from the Neshaminy School District, one of the six districts that sends students to Bucks Technical, testified that 34 students in learning support classrooms from Neshaminy applied to the ninth grade and 13 students in learning support classrooms from Neshaminy applied to the tenth grade at Bucks Technical for the 2003–2004 school·year. (Tr. 5/5/03 at 47.) This testimony indicated that there were at least 47 class members from the Neshaminy School District for that year and that school district alone. The settlement class, which includes well over 40 members, meets the numerosity requirement of Rule 23(a)(1).

 Rule 23(a)(2) requires that there be questions of law and fact common to the class. At least in cases seeking injunctive relief, "[t]he commonality requirement will be satisfied if the named Plaintiffs share at least one question of fact or law with the grievances of the prospective class...." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir.1994). Moreover, "because they do not also involve an individualized inquiry for the determination of damage awards, injunctive actions by their very nature often present common questions satisfying Rule 23(a)(2)." *Id.* at 57 (internal quotations and citations omitted). In the instant case, the factual and legal questions common to all class members included (1) whether Bucks Technical denied admission to otherwise qualified students who have an identified need for learning support classes on the basis of their disabilities, in violation of the ADA and Section 504; and (2) whether Bucks Technical was required by the ADA and Section 504 to modify its admissions and other policies, practices and procedures when necessary to avoid discriminating against class members on the

basis of disability. Because the settlement class members have these questions of fact and law in common, the requirement of Rule 23(a)(2) is met.

 Rule 23(a) also requires that named plaintiffs' claims be typical of those of class members. "Typicality entails an inquiry [into] whether the named Plaintiff's individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of the other class members will perforce be based." *Baby Neal*, 43 F.3d at 57–58 (internal citations omitted). "[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims.... Actions requesting declaratory and injunctive relief to remedy conduct directed at the class clearly fit this mold." *Id.* at 58. Serventi's and Whyno's claims were typical of those of class members since they challenged the same policies and practices and course of conduct as those that gave rise to the claims of the class and were based on the same legal theories. Named plaintiffs and class members were all unable to access the vocational education services of the only public vocational school that serves their school districts, and thus were unable to take advantage of the range of vocational programs that were available to students who were not disabled., Therefore, the typicality requirement of Rule 23(a)(3) is satisfied.

 Rule 23(a)(4) requires that named plaintiffs fairly and adequately protect the interests of the class. This requirement is satisfied if the interests of the named representatives are not antagonistic to those of other class members and plaintiffs' attorneys are qualified, experienced, and generally able to conduct the litigation. *See Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir.1988). Here, Serventi and Whyno and the class shared the same injuries and sought the same relief—declaratory and injunctive relief to end Defendants' violations of the ADA and Section 504. Additionally, plaintiffs' counsel, the Disabilities Law Project and the Edu-

cation Law Center are qualified and experienced in federal class action litigation involving the rights at issue in the instant case. *See, e.g., T.B. v. School District of Philadelphia,* 1997 WL 786448, 1997 U.S. Dist. LEXIS 19300, (E.D.Pa. Dec.1, 1997) (class certification granted in special education case with Education Law Center as counsel); *Anderson v. Dep't of Public Welfare,* 1 F.Supp.2d 456, 462 (E.D.Pa.1998) (class certified in ADA case with Disabilities Law Project as counsel); *Richard C. v. Snider,* 1993 WL 757634, at \*5 (W.D.Pa. June 22, 1993) (finding the Disabilities Law Project to be "extremely qualified" to represent class in Section 504 case); *Duane B. v. Chester Upland School District,* 1990 WL 55082 (E.D.Pa. Apr.27, 1990) (class certified in special education case with Education Law Center as counsel). Accordingly, the requirements of Rule 23(a)(4) are satisfied.

 The settlement class also meets the requirements of Rule 23(b)(2) because the basis for plaintiffs' claims was that Bucks Technical was acting on grounds generally applicable to the class. Plaintiffs alleged that Bucks Technical has a policy and practice of discriminating against class members by refusing to admit them to the school or refusing to provide them with equal access to the range of vocational programs at the school if they needed a learning support classroom for an academic subject and/or if their reading or math level was below the fifth grade. Plaintiffs alleged that these policies and practices of Bucks Technical violated the ADA and Section 504 of the Rehabilitation Act." It is generally recognized that civil rights actions seeking relief on behalf of classes ... normally meet the requirements of Rule 23(b)(2)." *Stewart v. Abraham,* 275 F.3d at 228. The relief plaintiffs sought was injunctive and declaratory, as envisioned by Rule 23(b)(2), and the relief that the proposed settlement class obtained through the settlement agreement is of that same nature. Therefore, the settlement class meets the requirements of Rule 23(b)(2).

As set forth above, this settlement class meets the requirements for a class action set forth in Rule 23(a) and (b).

## B. Final Approval of Settlement

 Federal Rule of Civil Procedure 23(e) provides that "[a] class action shall not be dismissed or compromised without the approval of the court." Fed.R.Civ.P. 23(e). Approval of a proposed class action settlement is within the discretion of the court. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 148 F.3d 283, 299 (3d Cir. 1998). "In determining whether settlement should be approved, the court must decide whether it is fair, reasonable, and adequate under the circumstances and whether the interests of the class as a whole are being served if the litigation is resolved by the settlement rather than pursued." *Manual for Complex Litigation,* § 30.42, at 238 (3d ed.1995). The Third Circuit applies a nine prong test when determining the fairness of a proposed settlement: (1) complexity, expense and likely duration of the litigation; (2) reaction of class; (3) stage of proceedings; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining class status; (7) ability to withstand greater judgment; (8) adequacy of settlement in light of best possible recovery; and (9) adequacy of settlement in light of all risks of litigation. *Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir.1975). After examining each of the nine factors, I find that the settlement agreement satisfies the *Girsh* test.

*Factor 1: Complexity, Expense and Likely Duration of the Suit*

 This suit has been, and, absent settlement, would continue to be complex, lengthy and expensive. At the time the Settlement Agreement was signed, the case had gone on for approximately a year and a half, involved more than a thousand hours of class counsel's time, involved continuing factual and legal disputes and required the assistance of experts for both parties. Without settlement, a fairly lengthy trial would have been necessary and may have led to appeals. In the meantime, class members' high school years would have come and gone. Settlement gave an entire class of student applicants the benefits of Bucks County Technical's changed admission policies.

### Factor 2: Reaction of the Class

In response to the class notice, approximately 30 parents of class members contacted plaintiffs' counsel. Many of the callers expressed support for the settlement. Others simply asked for more information, which plaintiffs' counsel provided. Plaintiffs' counsel received seven written responses to the class notice. Through these letters, parents expressed either support for the proposed settlement agreement or concern that their own children had not been treated fairly by Bucks Technical. Plaintiffs' attorneys indicated during the fairness hearing that they are working with those individuals who are having difficulty with Bucks Technical. None of these individuals expressed objections to the settlement agreement.

The only letter that indicated an objection to the settlement agreement was written by Janet Thomas–Mackensen. She objects to the qualification that students with disabilities will be admitted into the vocational programs of their choice "subject to space limitations." She sees the phrase "subject to space limitations" as a loop hole for the school to deny admissions to students with learning disabilities. Ms. Thomas–Mackensen had no other objections to the settlement. In response to this objection, plaintiffs' counsel explained that the phrase "subject to space limitations" only applies to those students who had already been denied admission and re-apply on a priority status after being rejected in the 2002–03 or 2003–04 school years. The phrase does not apply to students who applied for the 2004–05 school year or any future years. Therefore, Ms. Thomas–Mackensen's objection has been adequately explained.

### Factor 3: Stage of Proceedings

The "stage of proceedings" factor "captures the degree of case development that class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re General Motors Corp.*, 55 F.3d at 813. Plaintiff's counsel conducted extensive discovery for about one year. They reviewed sixteen boxes of student applica-tions and other documents and recorded the data into a database for analysis. Plaintiffs' counsel conducted numerous depositions and received responses to numerous interrogatories and requests for admissions. Plaintiffs retained two expert witnesses who prepared their own reports as well as rebuttals to a report prepared by defendant's expert. This case had reached a stage where the merits of the case could be seen fully.

### Factors 4–6: Risks of Establishing Liability and Damages and Maintaining the Class Action

There was a risk of establishing liability because some of the legal issues raised in the case had never been decided (e.g., whether reading and math levels could legitimately be reasons for denying a public vocational education to a student with learning disabilities). There were also factual issues in dispute regarding Bucks Technical's admissions policies. Finally, near the end of discovery, Bucks Technical indicated it was going to change its admissions policy, thereby raising the possible defense of mootness. At the time of the settlement agreement, I had not yet certified the class and Bucks County was vigorously opposing class certification. The class was certified only after Bucks County withdrew its opposition and agreed to certification of the class for settlement purposes. These risks weigh in favor of approving the settlement.

### Factor 7: Ability of defendants to withstand a greater judgment

This factor is inapplicable in this case because the plaintiffs never sought monetary damages. They were only seeking injunctive and declaratory relief. They obtained everything they were seeking in the settlement.

### Factors 8–9: Adequacy of the Settlement in Light of the Best Possible Recovery and the Risks of Litigation

The Settlement Agreement provides all the basic policy changes that plaintiffs had sought—elimination of reading and math level requirements for admission to the school, the provision of academic learning support classrooms for students in the full range of

vocational programs, and an end to the practice of denying admission to students who need academic learning support classrooms or of limiting those students to only two of the 31 vocations programs at the school. The agreement gives priority admission status to those who were wrongly denied admission in the past. The agreement will be monitored by plaintiffs' counsel for the next three years and violations of the agreement are addressable in this court which retains jurisdiction over the settlement agreement.[4] Because plaintiffs were able to obtain everything they were seeking in the lawsuit through the settlement, these factors weigh strongly in favor of approval of the settlement.

## C. Approval of Attorneys' Fees

■ A thorough judicial review of fee applications is required in all class action settlements. *See In re The Prudential Ins. Co.*, 148 F.3d at 333 (citations omitted). This review must take place even when there is an agreement between plaintiffs and defendants as to the amount of the attorneys' fees. *In re General Motors Corp.*, 55 F.3d at 819.

■ There are two methods for calculating attorneys' fees, the percentage-of-recovery method and the lodestar method. *Prudential*, 148 F.3d at 333. The Third Circuit has explained that "[t]he percentage-of recovery method is generally favored in cases involving a common fund." *Id.* (citations omitted). Whereas, "[t]he lodestar method is more commonly applied in statutory fee-shifting cases, and is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would

provide inadequate compensation." *Id.* The lodestar method is also "applied in cases where the nature of the recovery does not allow the determination of the settlement's value necessary for application of the percentage-of-recovery method." *Id.* The "lodestar" is the number of hours reasonably expended multiplied by the applicable hourly market rate for legal service. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The Supreme Court has held that in statutory fee-shifting cases (such as federal civil rights actions), there is a presumption against an upward adjustments, or using multipliers, to increase the lodestar amount, although such multipliers are appropriate in exceptional cases. *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

■ In this case, plaintiffs' attorneys received a total of $100,000 for fees and costs as part of the Settlement Agreement. Bucks Technical provided $80,000 and the Pennsylvania Department of Education paid $20,000 as part of a separate agreement. As of November 30, 2003, plaintiffs attorneys had worked a total of 1,379 hours at hourly rates ranging from $160/hour to $350/hour depending on the experience of the attorney. The lodestar is $339,663.80.[5] Their total costs as of that time were $56,930.90. These figures do not include the time spent in settlement negotiations and preparing the agreement for approval after November 30, 2003. Given that the total attorneys' fees and costs are well over the $100,000 that plaintiffs' attorneys received under the settlement, and given the comprehensive nature of the remedy that plaintiffs' counsel obtained for the class, plaintiffs' attorneys' fees are reasonable and do not compromise the fairness and adequacy

---

4. Paragraph 27 of the Settlement Agreement provides that this action will be dismissed three years from the date of the approval of the Settlement Agreement without prejudice to the right of plaintiffs and class members. Rather than keep this case open, I will immediately dismiss plaintiffs' and class members' claims without prejudice. However, I expressly retain jurisdiction over the Settlement Agreement, thereby making compliance with the settlement agreement part of my dismissal order. *See In re Phar–Mor, Inc. Securities Litigation*, 172 F.3d 270, 274 (3d Cir. 1999).

5. Attorney Janet Stotland spent 95.75 hours on this case at the rate of $350/hour; attorney Rachel Mann spent 508.84 hours on this case at the rate of $260/hour; attorney Robin Resnick spent 3.75 hours on this case at the rate of $260/hour; attorney Kelly Darr spent 718.7 hours on this case at the rate of $225/hour; attorney Kristi Bushner spent 34.46 hours on this case at the rate of $240/hour; and attorney Jackie Burke spent 16.5 hours on this case at the rate of $160/hour.

of the terms of the Settlement Agreement to the class members.

## III. CONCLUSION

For the reasons set forth above, the joint motion for final approval of the settlement agreement is granted. Plaintiffs' claims are dismissed without prejudice. I retain jurisdiction over the enforcement of the settlement agreement.