[No. B219584. Second Dist., Div. One. Oct. 22, 2010.]

CARLOS VILLACRES, Plaintiff and Appellant, v.
ABM INDUSTRIES INC. et al., Defendants and Respondents.

## Counsel

Initiative Legal Group, Marc Primo, Sharla Ann Manley, Dina S. Livhits, Orlando Arellano and Glenn A. Danas for Plaintiff and Appellant.

Littler Mendelson, Keith A. Jacoby, Dominic J. Messiha and Heather M. Davis for Defendants and Respondents.

## Opinion

**MALLANO, P. J.**—In a prior class action, employees sued their employer, alleging failure to pay overtime compensation (see Lab. Code, §§ 510, 1194), failure to pay wages for a split shift (see Cal. Code Regs., tit. 8, § 11040, subd. 4(C)), and violation of the unfair competition law (Bus. & Prof. Code, §§ 17200–17209). The employees also sought civil penalties under the Labor Code. (See Lab. Code, § 558.) Ultimately, the action settled, with the employer agreeing to pay up to $2.5 million to class members and their counsel. The employer allocated up to $730,000 for penalties. The superior court approved the settlement agreement and dismissed the case with prejudice.

Two days later, plaintiff, a member of the prior class, filed this action against the same employer, seeking civil penalties under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, §§ 2698–2699.5) for alleged violations of the Labor Code with respect to paying overtime compensation (see Lab. Code, §§ 510, 1194), furnishing employees with complete wage statements (see *id.*, § 226, subd. (a)), providing meal and rest periods (see *id.*, §§ 226.7, 512), indemnifying employees for business expenses and losses (see *id.*, §§ 2800, 2802), and paying wages on a timely basis (see *id.*, §§ 201, 202, 204).

The trial court granted the employer's motion for summary judgment on the ground that plaintiff's claims were barred under the doctrine of res judicata.

We agree with the trial court. A court-approved settlement in a prior suit precludes subsequent litigation on the same cause of action. Res judicata bars not only issues that were raised in the prior suit but related issues that could have been raised. Here, plaintiff attempted a second time to recover civil penalties for alleged Labor Code violations. But he could have sought to expand the scope of the prior action to include his additional penalty claims. In the alternative, he could have opted out of the class. Instead he reaped the benefits of the settlement in the prior action and then promptly filed this suit, seeking more penalties. We conclude res judicata applies and affirm.

# I

# BACKGROUND

The allegations and facts in this case are taken from the papers and exhibits submitted in connection with the motions for summary judgment.

## A. *Prior Class Action*

On February 23, 2006, Jennifer Augustus and Eleazer Hernandez filed a class action against American Commercial Security Services (ACSS), a wholly owned subsidiary of ABM Industries Inc., alleging that ACSS had failed to pay its employees overtime compensation (see Lab. Code, §§ 510, 1194) and had violated the unfair competition law (Bus. & Prof. Code, §§ 17200–17209) (*Augustus v. American Commercial Security Services, Inc.* (Super. Ct. L.A. County, 2008, No. BC347914) (*Augustus*)). The complaint sought penalties under Labor Code section 558.[1] A first amended complaint (complaint) followed, adding a cause of action for failure to pay wages for a split shift (see Cal. Code Regs., tit. 8, § 11040, subd. 4(C)).

*Augustus* was brought on behalf of a class of similarly situated current and former ACSS security guards. The *Augustus* plaintiffs and putative class members were represented by Roxborough, Pomerance & Nye and Benjamin T. Lee.

The parties in *Augustus* participated in mediation and reached a tentative settlement subject to the approval of the superior court. Under the terms of the proposed settlement, ACSS would contribute up to $2.5 million to compensate class members and representatives, pay attorney fees and costs, and cover expenses associated with class administration. Of the total amount, the parties allocated $730,000 to be paid as "civil and statutory penalties." The proposed settlement agreement obligated the parties to obtain an order preliminarily approving the settlement "subject only to the objections of Class Members and final review by the Court."

On August 23, 2007, the superior court, Judge David L. Minning presiding, issued an order granting preliminary approval of the *Augustus* settlement agreement. The court found that the "Notice of Proposed Class Action Settlement and Final Fairness and Approval Hearing" (Notice) "fully and accurately inform[ed] the Class members of *all material elements* of the

---

[1] Labor Code section 558 states that, for an initial violation, an employer must pay a $50 penalty for each underpaid employee for each pay period of underpayment. For each subsequent violation, the employer must pay a penalty of $100 for each underpaid employee for each pay period of underpayment.

proposed Agreement, of the Class members' right to be excluded from the Class, and of each Class member's right and opportunity to object to the settlement." (Italics added.) The Notice also constituted "the best notice practicable under the circumstances and [is] in full compliance with the laws of the State of California, the Federal Rules of Civil Procedure, to the extent applicable, the United States Constitution, and the requirements of due process." A class member who filed a timely objection could appear at the "Final Fairness and Approval Hearing" and present oral argument and evidence supporting the objection. The settlement agreement defined the class as "[a]ll current and former security officers employed by [ACSS] who worked in the State of California anytime between February 23, 2002, and the date of the preliminary approval of this Settlement Agreement[, August 23, 2007]." The court granted conditional certification of the provisional settlement class.

The order also recited: "[T]he Agreement was the product of serious, informed, non-collusive negotiations conducted at arm's length by the parties. In making this preliminary finding, the Court considered the nature of the claims, the amounts and kinds of benefits paid in settlement, the allocation of the settlement among the class members, [and] the financial condition of the parties . . . . [T]he terms of the Agreement have no obvious deficiencies and do not improperly grant preferential treatment to any individual class member. Accordingly, the Court preliminarily finds that the Agreement was entered into in good faith . . . ."

On October 10, 2007, the Notice was mailed to 11,140 putative class members, explaining the terms of the proposed settlement. The recipients had 60 days to request exclusion from, or to opt out of, the class; 201 opted out. No one objected to the settlement.

The final fairness and approval hearing was held on February 29, 2008. At the conclusion of the hearing, Judge Minning issued an order granting final approval of the settlement agreement. The order recited: "With this final approval of the proposed Settlement, *it is hereby ordered that the claims defined more fully in the Settlement Agreement and below, are forever barred. The claims include claims for unpaid wages, interest, penalties and fees,* including but not limited to overtime, split shift premiums, 'off-the-clock' work [and] wai[t]ing time penalties . . . for Class Members who were terminated from employment with Defendant on or after February 23, 2003, up to and including August 23, 2007 . . . ." (Italics added.) The trial court certified a class in accordance with the class definition in the settlement agreement. The order also stated: "A full opportunity has been afforded to the Settlement Class Members to participate in this hearing, and all Settlement Class Members and other persons wishing to be heard have been heard.

Accordingly, the Court determines that all Class Members who did not timely . . . submit an [opt-out form] are bound by this Order." Finally, the order provided that after all amounts had been paid pursuant to the settlement agreement, the case would be dismissed with prejudice.

In its final form, the settlement agreement stated: "Now therefore, in consideration of the mutual covenants, promises and warranties set forth herein, the Class Representatives, the Settlement Class . . . and the Defendant agree . . . that this Action, and any claims, damages, or causes of action arising out of the facts and allegations set forth in the Action, including those set forth in the First Amended Complaint, related to pay for all time allegedly worked but not compensated, including, but not limited to, 'off-the-clock' work, overtime, split shift premiums, any alleged failure to make wage payments in a timely manner, and any applicable penalties (including but not limited to those under California Labor Code section 203) shall be settled and compromised as between the Class Representatives, the Class Members and Defendant, subject to the terms and conditions set forth in this Agreement. This Agreement specifically excludes, however, the right of any Settlement Class Member to recover wages under California Labor Code section 226.7 for alleged missed meal and/or rest periods, as well as any corresponding claims for penalties resulting from untimely payment of such wages prior to February 23, 2003, *as explained in further detail below*." (Italics added.)

The agreement continued: "In consideration of the monetary sum provided by Defendant and upon final approval of this Agreement by the Court, *the Settlement Class and each of the Class Members hereby . . . waive, fully release and forever discharge the Releasees from* any and all claims, debts, liabilities, demands, obligations, . . . damages, action or causes of action of any kind, whether known or unknown, which have been or could have been asserted against the Releasees arising out of or related to all claims for wages, overtime pay, pay for all time allegedly worked but not compensated, and *all other claims of any kind for wages, penalties, interests, costs and attorneys' fees arising from the alleged violation of any provision of common law, California law and/or Federal law which* [were] *or could have been raised as part of the Plaintiffs' claims*, including but not limited [to] claims under California Labor Code section[s] 201, 202, 204, 210, 218, 510, 512, 551, 552, 558, 1182, 1194, 1197, and 1198, and Business and Professions code sections 17200 et seq. except as to such rights or claims as may be created by this Agreement, *with the express exclusion* of claims raised in and arising from Augustus v. American Commercial Security Services, et al., Case No. BC 336416, Davis v. American Commercial Security Services, Inc., Case No. CGC 5444421; Hall and Waite v. American Commercial Security Services, Inc., Case No. BC 345918, which have been consolidated with each other in Los Angeles Superior Court and are pending before the Honorable Peter Lichtman; and Batiz and Heine v. American Commercial Security

Services, et al., Case No. EDCV-06-00566 VAP, currently pending in federal district court in Riverside, California ('Meal and Rest Period Cases'), and with the express exclusion of claims for waiting time penalties for those Class Members whose employment terminated prior to February 23, 2003." (Italics added & omitted.)

"Releasees" meant "ACSS, its affiliates, subsidiaries, parent, successors-in-interest, and assigns, and all of their present, former and future officers, directors, shareholders, employees, agents, attorneys, insurers, and representatives . . . up until the present time."

Further, the settlement agreement provided that "Class Members expressly waive any right or claim of right to assert hereafter that any claim, demand, obligation, and/or cause of action has, through ignorance, oversight, or error, been omitted from the terms of this Agreement. . . . [N]othing in this Agreement shall be construed to waive any right that is not subject to waiver by private agreement, including without limitation any claims arising under state unemployment insurance or workers' compensation laws or California Labor Code section 2802[, entitling an employee to indemnification for business expenses and losses]."

On April 1, 2008, the *Augustus* suit was dismissed with prejudice. There was no appeal.

## B. *Present Action*

On April 3, 2008, Carlos Villacres, represented by the Initiative Legal Group, filed this action against his former employer, ABM Security Services, Inc., and two related companies, ABM Industries Inc. and SSA Security, Inc. (defendants). Defendants were related to ACSS, the employer in *Augustus*, and, together with ACSS, constituted a single employer for purposes of this action. The title page of the complaint contained the caption "Class Action" and stated Villacres had brought the action "individually and on behalf of all other members of the public similarly situated." The proposed class consisted of nonexempt or hourly employees who were employed by defendants from March 15, 2007, until the resolution of the case.

Under the heading "Class Action Allegations," the complaint alleged that there was a well-defined community of interest in the litigation and that the class was easily ascertainable. The action allegedly satisfied the class action requirements of numerosity, typicality, adequacy, and superiority. (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2010) ¶¶ 14:11 to 14:11.20, pp. 14-10 to 14-12 (rev. # 1, 2010).) The complaint sought civil penalties under the PAGA for a violation of the Labor Code.

In a first amended complaint (complaint) filed on April 7, 2008, Villacres dropped all references and allegations concerning a class action, and alleged he was bringing the action as "an individual" on behalf of himself and other aggrieved employees. (See *Arias v. Superior Court* (2009) 46 Cal.4th 969, 980–987 [95 Cal.Rptr.3d 588, 209 P.3d 923] [PAGA suit is a representative action and need not be brought as a class action].) Villacres sought civil penalties under the PAGA for alleged Labor Code violations related to paying overtime compensation (see Lab. Code, §§ 510, 1194), furnishing employees with complete wage statements (see *id.*, § 226, subd. (a)), providing meal and rest periods (see *id.*, §§ 226.7, 512), indemnifying employees for business expenses and losses (see *id.*, §§ 2800, 2802), and paying wages on a timely basis (see *id.*, §§ 201, 202, 204). For each Labor Code violation, Villacres sought PAGA penalties of $100 per employee per pay period for the initial violation and $200 per employee per pay period for each subsequent violation. (See Lab. Code, § 2699, subd. (f)(2); all undesignated section references are to that code.) The complaint also sought attorney fees under the PAGA. (See § 2699, subd. (g)(1).)

Before filing suit, Villacres complied with the PAGA's notice and administrative exhaustion requirements. (See § 2699.3.)

Defendants employed Villacres from March 15, 2007, to April 16, 2007. He was a member of the class in *Augustus*. He did not opt out of the class, object to the settlement, or seek to intervene in the suit.

On April 15, 2009, defendants filed a motion for summary judgment, contending the doctrine of res judicata barred this action based on the settlement and the dismissal with prejudice in *Augustus*. Villacres filed opposition, arguing the PAGA claims in this action were not asserted in *Augustus*, nor were several of the underlying Labor Code violations.[2]

The trial court, Judge Peter D. Lichtman presiding, heard the motion on July 9, 2009, and took the matter under submission. By minute order dated July 10, 2009, Judge Lichtman granted the motion, relying primarily on the language in the *Augustus* settlement agreement releasing all claims for wages and penalties. The trial court also found that "the claims at issue in [this action] fall into the category of claims that could have been asserted in the *Augustus* . . . matter." Villacres appealed.

---

[2] Defendants refer to the prior action as *Augustus II*. Villacres calls it *Augustus I*. For simplicity, we use *Augustus*.

## II

## DISCUSSION

Summary judgment is appropriate if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)

" ' "A defendant seeking summary judgment has met the burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action cannot be established [or that there is a complete defense to that cause of action]. . . . Once the defendant's burden is met, the burden shifts to the plaintiff to show that a triable issue of fact exists as to that cause of action. . . . In reviewing the propriety of a summary judgment, the appellate court independently reviews the record that was before the trial court. . . . We must determine whether the facts as shown by the parties give rise to a triable issue of *material* fact. . . . In making this determination, the moving party's affidavits are strictly construed while those of the opposing party are liberally construed." . . . We accept as undisputed facts only those portions of the moving party's evidence that are not contradicted by the opposing party's evidence. . . . In other words, the facts alleged in the evidence of the party opposing summary judgment and the reasonable inferences therefrom must be accepted as true.' " (*Buxbaum v. Aetna Life & Casualty Co.* (2002) 103 Cal.App.4th 434, 441 [126 Cal.Rptr.2d 682], italics added.)

### A. *Res Judicata*

█ " 'The doctrine of res judicata rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent. Public policy and the interest of litigants alike require that there be an end to litigation.' " (*Citizens for Open Access etc. Tide, Inc. v. Seadrift Assn.* (1998) 60 Cal.App.4th 1053, 1065 [71 Cal.Rptr.2d 77].) "[R]es judicata benefits both the parties and the courts because it 'seeks to curtail multiple litigation causing vexation and expense to the *parties* and wasted effort and expense in *judicial administration.*' " (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 897 [123 Cal.Rptr.2d 432, 51 P.3d 297].)

█ "Under the doctrine of res judicata, a valid, final judgment on the merits is a bar to a subsequent action by parties or their privies on the same cause of action. . . . In California, a 'cause of action' is defined by the

'primary right' theory. 'The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action.' . . . In particular, the primary right theory provides that a cause of action consists of (1) a primary right possessed by the plaintiff, (2) a corresponding duty devolving upon the defendant, and (3) a delict or wrong done by the defendant which consists of a breach of the primary right. . . . ' "If the matter was within the scope of the action, related to the subject matter and relevant to the issues, so that it *could* have been raised, the judgment is conclusive on it . . . . The reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions. Hence the rule is that the prior judgment is res judicata on matters which were raised or could have been raised, on matters litigated or litigable. . . ." ' " (*Amin v. Khazindar* (2003) 112 Cal.App.4th 582, 589–590 [5 Cal.Rptr.3d 224], citations omitted.)

▪ "The fact that different forms of relief are sought in the two lawsuits is irrelevant, for if the rule were otherwise, 'litigation finally would end only when a party ran out of counsel whose knowledge and imagination could conceive of different theories of relief based upon the same factual background.' . . . '. . . [U]nder what circumstances is a matter to be deemed decided by the prior judgment? Obviously, if it is actually raised by proper pleadings and treated as an issue in the cause, it is conclusively determined by the first judgment. But the rule goes further. If the matter was within the scope of the action, related to the subject-matter and relevant to the issues, so that it could have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged. . . . ". . . [A]n issue may not be thus split into pieces. If it has been determined in a former action, it is binding notwithstanding the parties litigant may have omitted to urge for or against it matters which, if urged, would have produced an opposite result . . . ." ' " (*Interinsurance Exchange of the Auto. Club v. Superior Court* (1989) 209 Cal.App.3d 177, 181–182 [257 Cal.Rptr. 37], citations & italics omitted.)

▪ " 'In California the phrase "cause of action" is often used indiscriminately . . . to mean *counts* which state [according to different legal theories] the same cause of action . . . .' . . . But for purposes of applying the doctrine of res judicata, the phrase 'cause of action' has a more precise meaning: The cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced. . . . '[T]he "cause of action" is based upon the harm suffered, as opposed to the particular theory asserted by the litigant. . . . Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief. "Hence a judgment for the defendant is a bar to a subsequent action by the plaintiff based on the same injury to the same right, even though [the plaintiff] presents a different *legal*

*ground* for relief." . . .' Thus, under the primary rights theory, the determinative factor is the harm suffered. When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right." (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 798 [108 Cal.Rptr.3d 806, 230 P.3d 342], citations omitted.)

■ "As far as its content is concerned, the primary right is simply the plaintiff's right to be free from the particular injury suffered. . . . It must therefore be distinguished from the *legal theory* on which liability for that injury is premised: 'Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief.' . . . The primary right must also be distinguished from the *remedy* sought: 'The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other.' " (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681–682 [34 Cal.Rptr.2d 386, 881 P.2d 1083], citations omitted; accord, *Weikel v. TCW Realty Fund II Holding Co.* (1997) 55 Cal.App.4th 1234, 1245–1247 [65 Cal.Rptr.2d 25].)

■ Res judicata applies to a court-approved settlement agreement in a class action dismissed with prejudice. (See *Citizens for Open Access etc. Tide, Inc. v. Seadrift Assn., supra*, 60 Cal.App.4th at pp. 1065, 1072; *Johnson v. American Airlines, Inc.* (1984) 157 Cal.App.3d 427, 431 [203 Cal.Rptr. 638]; *Alpha Mechanical, Heating & Air Conditioning, Inc. v. Travelers Casualty & Surety Co. of America* (2005) 133 Cal.App.4th 1319, 1326–1331 [35 Cal.Rptr.3d 496]; *Morris v. Blank* (2001) 94 Cal.App.4th 823, 828–830 [114 Cal.Rptr.2d 672].) In applying the doctrine of res judicata, courts may examine the terms of the settlement agreement to ensure that the defendant did not waive res judicata as a defense. (See, e.g., *Citizens for Open Access, supra*, 60 Cal.App.4th at pp. 1065–1068; *Consumer Advocacy Group, Inc. v. ExxonMobil Corp.* (2008) 168 Cal.App.4th 675, 688–689 [86 Cal.Rptr.3d 39]; see also *United Bank & Trust Co. v. Hunt* (1934) 1 Cal.2d 340, 345–346 [34 P.2d 1001]; *Aerojet-General Corp. v. American Excess Ins. Co.* (2002) 97 Cal.App.4th 387, 399–400 [117 Cal.Rptr.2d 427].)

■ The doctrine is applicable "if (1) the decision in the prior proceeding is final and on the merits; (2) the present proceeding is on the *same cause of action* as the prior proceeding; and (3) the parties in the present proceeding or parties in privity with them were parties to the prior proceeding." (*Federation of Hillside & Canyon Assns. v. City of Los Angeles* (2004) 126 Cal.App.4th 1180, 1202 [24 Cal.Rptr.3d 543], italics added.) "[R]es judicata will not be applied 'if injustice would result or if the public interest requires that relitigation not be foreclosed.' " (*Dunkin v. Boskey* (2000) 82 Cal.App.4th 171, 181 [98 Cal.Rptr.2d 44].)

Here, the parties dispute whether *Augustus* and the present action involve the same cause of action and whether Villacres was in privity with the *Augustus* plaintiffs.

## B. *Identity of Issues*

In *Augustus*, the complaint alleged the employer had failed to pay overtime compensation, failed to pay wages for a split shift, and violated the unfair competition law. It also sought civil penalties under section 558. (See fn. 1, *ante.*)

Villacres brought this action against the same employer, seeking civil penalties under the PAGA based on the employer's alleged failure to pay overtime compensation and its alleged violation of other Labor Code provisions.

"In September 2003, the Legislature enacted the [PAGA, declaring] . . . that adequate financing of labor law enforcement was necessary to achieve maximum compliance with state labor laws, that staffing levels for labor law enforcement agencies had declined and were unlikely to keep pace with the future growth of the labor market, and that it was therefore in the public interest to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts. . . . [¶] Under this legislation, an 'aggrieved employee' may bring a civil action personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations. . . . Of the civil penalties recovered, 75 percent goes to the Labor and Workforce Development Agency, leaving the remaining 25 percent for the 'aggrieved employees.' " (*Arias v. Superior Court, supra,* 46 Cal.4th at pp. 980–981, citations & fn. omitted; see generally *Franco v. Athens Disposal Co., Inc.* (2009) 171 Cal.App.4th 1277, 1300–1303 [90 Cal.Rptr.3d 539].) If an employee prevails in a PAGA action, he or she is entitled to an award of reasonable attorney fees and costs. (§ 2699, subd. (g)(1).)

"The Legislature has made clear that an action under the PAGA is in the nature of an enforcement action, with the aggrieved employee acting as a private attorney general to collect penalties from employers who violate labor laws. Such an action is fundamentally a law enforcement action designed to protect the public and penalize the employer for past illegal conduct. Restitution is not the primary object of a PAGA action, as it is in most class actions. Before the PAGA was enacted, an employee could recover damages, reinstatement, and other appropriate relief but could not collect civil penalties. The Labor and Workforce Development Agency . . . collected them. The PAGA changed that." (*Franco v. Athens Disposal Co., Inc., supra,* 171 Cal.App.4th at p. 1300.)

"In bringing such an action, the aggrieved employee acts as the proxy or agent of state labor law enforcement agencies, representing the same legal right and interest as those agencies, in a proceeding that is designed to protect the public, not to benefit private parties. . . .

█ "A cause of action is transferable, that is, assignable, by its owner if it arises out of a legal obligation or a violation of a property right. . . . The [PAGA] does not create property rights or any other substantive rights. Nor does it impose any legal obligations. It is simply a procedural statute allowing an aggrieved employee to recover civil penalties—for Labor Code violations—that otherwise would be sought by state labor law enforcement agencies. . . . [T]he right to recover a statutory penalty may not be assigned. . . . Therefore, under the [PAGA] an aggrieved employee cannot assign a claim for statutory penalties because the employee does not own an assignable interest." (*Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 1003 [95 Cal.Rptr.3d 605, 209 P.3d 937], citations omitted.)

█ "The [PAGA's] declared purpose is to supplement enforcement actions by public agencies, which lack adequate resources to bring all such actions themselves. . . . In a lawsuit brought under the act, the employee plaintiff represents the same legal right and interest as state labor law enforcement agencies—namely, recovery of civil penalties that otherwise would have been assessed and collected by the Labor Workforce Development Agency. . . . The employee plaintiff may bring the action only after giving written notice to both the employer and the Labor and Workforce Development Agency . . . ." (*Arias v. Superior Court, supra,* 46 Cal.4th at p. 986, citations omitted.)

The PAGA is limited to the recovery of *civil* penalties. (§§ 2699, subds. (a), (f), 2699.3, subd. (a), 2699.5; *Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365, 374–377 [36 Cal.Rptr.3d 31]; *Franco v. Athens Disposal Co., Inc., supra,* 171 Cal.App.4th at pp. 1300–1303.) Some Labor Code provisions establish penalties that are not expressly denominated "civil penalties" and are therefore not subject to the PAGA. If a penalty under the Labor Code is not a "civil penalty," it is commonly called a "statutory penalty." For instance, section 201, subdivision (a), requires an employer to pay an employee's wages immediately upon discharge. In addition to the recovery of unpaid wages, section 203 imposes a *statutory* penalty of one day's wages for each day that the wages remain unpaid, not to exceed 30 days. And section 256 authorizes the Labor Commissioner to impose a *civil* penalty in the form of waiting time pay for the same statutory violation. But only the recovery of the civil penalty falls within the PAGA. (See *Caliber Bodyworks, Inc. v. Superior Court, supra,* 134 Cal.App.4th at pp. 377–378.)

 The PAGA also distinguishes between a provision of the Labor Code that provides its own civil penalty and a provision with no specified penalty. The PAGA provides the applicable civil penalty if a particular Labor Code provision does not specify one. (Compare § 2699, subd. (a) [referring to "any provision of this code that provides a civil penalty"] with § 2699, subd. (f) [establishing civil penalties under PAGA for "all provisions of this code except those for which a civil penalty is specifically provided"].) Although both types of civil penalties are recoverable under the PAGA, the amount of the penalty may differ. For example, a failure to pay overtime compensation (§ 510) is subject to the civil penalty provided in section 558, namely, $50 per employee per pay period for an initial violation, and a penalty of $100 per employee per pay period for each subsequent violation (§ 558, subd. (a)(1), (2)). In contrast, the failure to indemnify employees for business expenses and losses (§§ 2800, 2802) is subject to the civil penalty set forth in the PAGA. (See § 2699, subd. (f)(2); *Caliber Bodyworks, Inc. v. Superior Court, supra,* 134 Cal.App.4th at pp. 375–386 & fns. 13–15; *Ruiz v. Paladin Group, Inc.* (C.D.Cal., Sept. 29, 2003, No. CV 03-6018-GHK(RZX)) 2003 WL 22992077, pp. *2–*3.) Under the PAGA, the civil penalty for an initial violation is $100 per employee per pay period, and the penalty for each subsequent violation is $200 per employee per pay period. Thus, a plaintiff in a PAGA suit must identify the civil penalties available under the PAGA's default provision as opposed to the civil penalties authorized by the underlying Labor Code provision. (See *Franco v. Athens Disposal Co., Inc., supra,* 171 Cal.App.4th at pp. 1302–1303; *Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1206 & fn. 22 [78 Cal.Rptr.3d 572].)

 Defendants urge us to adopt a categorical rule that employees must assert all known Labor Code violations and PAGA penalties in a single suit, at least where the violations are related to wages. We acknowledge that courts have recognized a primary right to be employed (*Balasubramanian v. San Diego Community College Dist.* (2000) 80 Cal.App.4th 977, 992 [95 Cal.Rptr.2d 837]), a primary right to be paid for services rendered (*S.E.L. Maduro v. M/V Antonio de Gastaneta* (11th Cir. 1987) 833 F.2d 1477, 1482; *Thomas v. Blue Cross & Blue Shield Assn.* (11th Cir. 2009) 333 Fed.Appx. 414, 418), and a primary right to be paid under a contract (*McNulty v. Copp* (1954) 125 Cal.App.2d 697, 703 [271 P.2d 90]).

For his part, Villacres contends each Labor Code violation and each corresponding PAGA penalty constitute a separate primary right. Under this approach, Villacres could have subdivided this dispute into six Labor Code actions, each with its own separate PAGA action, for a total of 12 suits. As Villacres sees it, an employer's failure to pay overtime compensation (§§ 510, 1194) violates the primary right to premium pay; the failure to provide meal periods (§§ 226.7, 512) violates the primary right to "consumption," while the

failure to provide rest periods (§ 226.7) violates the primary right to "elimination" (see *California Manufacturers Assn. v. Industrial Welfare Com.* (1980) 109 Cal.App.3d 95, 115 [167 Cal.Rptr. 203]); and the failure to provide a complete wage statement violates the primary right to a full explanation of gross and net wages. Thus, each Labor Code provision involves a distinct primary right.

■ In addition, Villacres contends the recovery of *unpaid wages* for the violation of a Labor Code provision does not involve the same primary right as the recovery of a *civil penalty* under the PAGA for the same violation: Compensation for a Labor Code violation serves the private interest of the aggrieved employee, but a penalty under the PAGA serves a public interest similar to that of other law enforcement statutes. (See *Arias v. Superior Court, supra,* 46 Cal.4th at pp. 980–981; *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court, supra,* 46 Cal.4th at p. 1003; *Franco v. Athens Disposal Co., Inc., supra,* 171 Cal.App.4th at p. 1300.) Res judicata may not apply if the subsequent action seeks to vindicate a public interest and the prior action served only a private interest. (See *Overseas Motors, Inc. v. Import Motors Ltd., Inc.* (E.D.Mich. 1974) 375 F.Supp. 499, 520–521 & fn. 74 [findings made in arbitration involving purely private contract dispute were not binding in subsequent antitrust action pursued by plaintiff acting as private attorney general on behalf of public].) Thus, the failure to pay overtime compensation could give rise to two lawsuits: one to recover unpaid wages and another to recover the corresponding PAGA penalties.

Defendants counter that Villacres's position would lead to an absurd result and contravene the fundamental purpose of res judicata: An employer would be subject to an endless series of class actions, each focusing on the violation of a different Labor Code provision or a PAGA penalty. Further, while it is true that the PAGA serves the public interest by discouraging employers from violating the law (see *Franco v. Athens Disposal Co., Inc., supra,* 171 Cal.App.4th at pp. 1300–1302), the same can be said of the penalties sought in a non-PAGA case like *Augustus* (see *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103–1104 [56 Cal.Rptr.3d 880, 155 P.3d 284]; *Mamika v. Barca* (1998) 68 Cal.App.4th 487, 491–493 [80 Cal.Rptr.2d 175]).

We need not decide whether, as defendants argue, the primary rights theory treats all wage-related Labor Code violations and PAGA penalties as a single cause of action or whether, as Villacres contends, every Labor Code violation and PAGA penalty involves a separate primary right. The disposition in this case does not turn on such broad propositions. Instead, we focus on the specific circumstances of this litigation.

■ As it turns out, Villacres's response to the Notice in the *Augustus* class action proves determinative. "After the members of the class have been

properly notified of the action, they are required to decide whether to remain members of the class represented by plaintiffs' counsel and become bound by a favorable or unfavorable judgment in the action, whether to intervene in the action through counsel of their own choosing, or whether to 'opt out' of the action and pursue their own independent remedies, such as negotiation with defendants, initiation of their own action, or intervention in some other action." (*Home Sav. & Loan Assn. v. Superior Court* (1974) 42 Cal.App.3d 1006, 1010 [117 Cal.Rptr. 485]; accord, Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, ¶ 14:133, p. 14-80 (rev. # 1, 2010).) "The critical reason for notification of members of the class on whose behalf a class action has been brought is that notification makes possible a binding adjudication and an enforceable judgment with respect to the rights of the members of the class. Absent such notification no member of the class need be bound by the result of the litigation." (*Home Sav. & Loan Assn., supra*, at p. 1011.)

In response to the Notice, Villacres could have (1) objected to the proposed settlement on the ground it should have included additional Labor Code violations and corresponding PAGA penalties, (2) sought to intervene in *Augustus* to pursue the same goal, or (3) opted out of the settlement and preserved his right to bring an independent action. (See *Home Sav. & Loan Assn. v. Superior Court, supra*, 42 Cal.App.3d at p. 1010; accord, Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, ¶ 14:133, p. 14-80; Cohelan on California Class Actions (2009–2010 ed.) §§ 4:28, 9:11 to 9:12, pp. 64–65, 377–381; 4 Newberg on Class Actions (4th ed. 2002) §§ 11:55, 11:58, pp. 168–181, 186–211 [discussing objections]; 5 Newberg on Class Actions, *supra*, § 16:9, pp. 171–179 [discussing intervention]; Cal. Rules of Court, rule 3.767(a)(4).)

If, through objection or intervention, Villacres's effort to add his PAGA claims in *Augustus* had caused a conflict of interest between class members, the superior court could have attempted to resolve that issue. As explained by our Supreme Court: "When the vast majority of a class perceives its interest as diametrically opposed to that of the named representatives, a trial court cannot equitably grant the named plaintiffs the right to pursue the litigation on behalf of the entire class. . . . The trial court can permit the plaintiffs to represent a smaller class if the minority can meet the requirements for class certification by showing an ascertainable class and a community of interest which is not coextensive with the larger class.

"If the vast majority of the class do not oppose the suit, the minority may have its views presented either as a subclass or as interveners." (*Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 471 [174 Cal.Rptr. 515, 629 P.2d 23], citations omitted.)

" '[M]ost differences in situation or interest among class members . . . should not bar class suit. If the factual circumstances underlying class members' claims differ, or if class members disagree as to the proper theory of liability, the trial judge, through use of techniques like subclassing or intervention, may incorporate the class differences into the litigative process, and give all class members their due in deciding what is the proper outcome of the litigation. Even if differences among class members are more fundamental, having to do with the type of relief which should be sought or indeed with whether the class opponent ought to be held liable at all, judicial accommodation appears to provide a sufficient mechanism for the protection of absentee interests. So long as a dispute concerns the outcome of litigation, the trial judge is in a position to isolate the differing positions, judge their validity in light of the substantive law governing the case, and shape the outcome of the suit to give the various class interests the weight to which the law entitles them.' . . .

"When a class contains various viewpoints, the courts may ensure that these viewpoints are represented by allowing them to join as interveners . . . or as additional representatives of subclasses within the full class. . . . This would ensure that the trial court was fully aware of the differing views within the class. Additional protection is afforded to absent class members by the provisions which allow a class member to opt out of the class if he or she does not wish to be bound by the result of the suit." (*Richmond v. Dart Industries, Inc., supra*, 29 Cal.3d at pp. 473–474, citations omitted; accord, Cohelan on California Class Actions, *supra*, § 5:6, pp. 71–72.)

A trial court may decline to modify a class or alter a settlement if, for example, an objection or a motion to intervene would result in undue delay or prejudice. (See Cohelan on California Class Actions, *supra*, §§ 4:28, 9:11 to 9:12, pp. 64–65, 377–381.) In that regard, an erroneous ruling may be corrected on appeal. (See *Cho v. Seagate Technology Holdings, Inc.* (2009) 177 Cal.App.4th 734, 742–748 [99 Cal.Rptr.3d 436]; 4 Newberg on Class Actions, *supra*, § 11:60, pp. 213–236.)

As an alternative to objecting or intervening in *Augustus*, Villacres could have easily preserved his PAGA claims by opting out of the class. Yet, he took no action in response to the Notice. He remained silent, stayed in the class, accepted the benefits of the settlement, and filed a PAGA suit as soon as *Augustus* was dismissed.

Under the doctrine of res judicata, " ' "[i]f the matter [raised in the subsequent suit] was within the *scope* of the [prior] action, related to the *subject matter* and *relevant* to the issues, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact

expressly pleaded or otherwise urged." ' " (*Amin v. Khazindar, supra,* 112 Cal.App.4th at pp. 589–590, italics added, last italics in original; accord, *Busick v. Workmen's Comp. Appeals Bd.* (1972) 7 Cal.3d 967, 975 [104 Cal.Rptr. 42, 500 P.2d 1386]; *Interinsurance Exchange of the Auto. Club v. Superior Court, supra,* 209 Cal.App.3d at pp. 181–182; Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2009) ¶ 16:685.1, p. 16-92.1 (rev. # 1, 2008); 2 Newberg on Class Actions, *supra,* § 4:14, p. 82; 7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 407, p. 1043.)

That principle applies in the unique circumstances of this case. Villacres could have attempted to assert his PAGA claims as a member of the class in *Augustus.* Defendants employed him for only one month, from March 15, 2007, to April 16, 2007. He was terminated four months *before* Judge Minning preliminarily approved the proposed settlement agreement in *Augustus* and 10 months *before* the settlement received final approval. The claims in *Augustus,* like Villacres's PAGA claims here, required proof of a Labor Code violation: *Augustus* included a claim for failure to pay overtime compensation (§§ 510, 1194); Villacres's PAGA claims in this case included the same claim. In addition, Villacres alleged (1) the failure to pay wages on a timely basis (§§ 201, 202, 204); (2) the failure to pay an additional hour of wages if employees were denied a meal or rest period (§ 226.7, subd. (b)); (3) the failure to indemnify employees for business expenses or losses (§§ 2800, 2802); and (4) the failure to provide complete wage statements (§ 226, subd. (a)). Further, like Villacres's PAGA claims, *Augustus* involved the recovery of penalties under the Labor Code, specifically, section 558. (See fn. 1, *ante.*) Simply put, Villacres's PAGA claims were within the scope of the *Augustus* litigation and were related to the subject matter and issues in that action: the payment of wages and penalties by the same employer. This is evident from the class action allegations—concerning ascertainability, numerosity, typicality, adequacy, and superiority—that appeared in Villacres's original complaint. (See pt. IB., *ante.*) Those allegations indicated that, as far as Villacres was concerned, his PAGA claims could have been asserted in *Augustus.* In other words, with respect to Villacres's PAGA claims, the class members in *Augustus* and the aggrieved employees in this case shared a community of interest with no insurmountable conflicts of interest.

Consequently, Villacres's PAGA claims *could have been raised* in the prior action for purposes of res judicata. (See *Zabel v. Cohn* (1996) 283 Ill.App.3d 1043 [219 Ill.Dec. 199, 670 N.E.2d 877, 878–883] [suit seeking unpaid salary and bonuses barred by res judicata because employee could have sought that relief in prior suit alleging other wage claims; both suits involved same injury to employee, namely, insufficient remuneration]; *In re Northwest Airlines Corp.* (Bankr. S.D.N.Y., Aug. 25, 2008, No. 05–17930 (ALG)) 2008 WL 4019847, pp. *3–*6 [employee's bankruptcy claim seeking wages, sick leave pay, and vacation pay barred by res judicata because that relief could have

been sought in prior civil action for wrongful discharge]; *Wang v. Prudential Ins. Co. of America* (N.D.Tex., Apr. 2, 2010, No. 3:09-cv-1309-O-BF) 2010 WL 1640182, pp. *1–*2, *4 [employee's action for compensation barred by res judicata because that relief could have been sought in prior action alleging discriminatory termination]; see generally *Amin v. Khazindar, supra*, 112 Cal.App.4th at pp. 589–590; *Busick v. Workmen's Comp. Appeals Bd., supra*, 7 Cal.3d at p. 975; *Interinsurance Exchange of the Auto. Club v. Superior Court, supra*, 209 Cal.App.3d at pp. 181–182.) Because Villacres did not raise his PAGA claims in *Augustus*—through objection, intervention, or by way of appeal—*or* opt out of the class, this suit is barred by res judicata.

Villacres could not partake of the *Augustus* settlement proceeds, which included an amount for penalties, *and* then bring an action for additional penalties. (See *U.S. v. Banco Internacional/Bital S.A.* (C.D.Cal. 2000) 110 F.Supp.2d 1272, 1276, 1278–1279 [government suit to forfeit funds held by bank precluded subsequent suit by government to impose penalties on bank]; *Oberstar v. F.D.I.C.* (8th Cir. 1993) 987 F.2d 494, 499, 505 [after individual appealed government order prohibiting him from participating in activities of insured depository institutions, government could not obtain additional order imposing monetary penalty on him]; *Davis v. Sun Oil Co.* (S.D. Ohio 1996) 953 F.Supp 890, 891, 893–896 [plaintiffs' failure to raise basis for penalties in prior suit barred subsequent action to recover penalties].)[3]

■ A party may not bring a second action solely to recover greater or different penalties. (See *Northern California River Watch v. Humboldt Petroleum, Inc.* (9th Cir. 2006) 162 Fed.Appx. 760, 764 [applying res judicata where second suit was based on different statute authorizing greater penalties than statutes raised in first suit]; *MicroVote General Corp. v. Indiana Election Com.* (Ind.Ct.App. 2010) 924 N.E.2d 184, 192–193, 197 [administrative agency's order imposing civil penalty involved same cause of action as different agency's order terminating company's operations; res judicata did not apply, however, because privity was lacking between two agencies].)

Nor did the settlement agreement in *Augustus* waive defendants' res judicata defense. That agreement stated: "[T]he Class Members hereby . . .

---

[3] Under federal law, courts do not apply the primary rights doctrine to determine the identity of issues but instead employ a transactional analysis test. (See *Friedman Prof. Management Co., Inc. v. Norcal Mutual Ins. Co.* (2004) 120 Cal.App.4th 17, 26–29 [15 Cal.Rptr.3d 359].) We rely on federal cases to the extent they are not inconsistent with the primary rights doctrine. (See *Federated Department Stores, Inc. v. Moitie* (1981) 452 U.S. 394, 398 [69 L.Ed.2d 103, 101 S.Ct. 2424] [res judicata bars claims that were or could have been raised]; *Louie v. BFS Retail & Commercial Operations, LLC* (2009) 178 Cal.App.4th 1544, 1553–1559 [101 Cal.Rptr.3d 441] [applying state and federal cases where result would be same under either jurisdiction's res judicata principles].)

fully release . . . the [employer] from any and *all claims*, debts, liabilities, demands, obligations, . . . damages, action or causes of action . . . which have been *or could have been* asserted against the [employer] arising out of or related to *all claims* for wages, overtime pay, pay for all time allegedly worked but not compensated, and *all other claims* of any kind for wages, *penalties*, interests, costs and attorneys' fees arising from the alleged violation of any provision of . . . California law and/or Federal law *which [were] or could have been raised as part of the Plaintiffs' claims.*" (Italics added.) As recited in the trial court's order granting final approval of the settlement: "[I]t is hereby ordered that the *claims* defined *more fully* in the *Settlement Agreement* . . . are *forever barred.* The claims *include* claims for unpaid wages, interest, *penalties* and fees, including but not limited to overtime, split shift premiums, 'off-the-clock' work [and] wai[t]ing time penalties . . . ." (Italics added.) Thus, the trial court expressly recognized that the *settlement agreement* released claims *in addition to* "claims for unpaid wages, interest, penalties and fees, including but not limited to overtime, split shift premiums, 'off-the-clock' work [and] wai[t]ing time penalties." Indeed, that is the effect of a standard general release, as we now discuss.

■ "A clause providing for the release of claims may refer to all claims raised in the pending action, *or* it may refer to all claims, both potential and actual, that *may have been raised* in the pending action with respect to the matter in controversy." (4 Newberg on Class Actions, *supra*, § 12:15, pp. 310–311, italics added.) "As a matter of settlement strategy, the defendants may negotiate a release of all claims up to the date of settlement, though this date naturally falls after the date the complaint was filed." (*Id.*, § 12:15, pp. 315–316.) "[T]here is no rigid rule against the addition of new claims shortly before submission of a proposed settlement provided that proper notice and opportunity for opting out are afforded . . . and that the settlement fairly and adequately provides for the new claims." (*Weinberger v. Kendrick* (2d Cir. 1982) 698 F.2d 61, 77, citations omitted.) "The weight of authority establishes that . . . a court may release not only those claims alleged in the complaint and before the court, but also claims which '*could have been alleged* by reason of or in connection with any matter or fact set forth or referred to in' the complaint. . . . And it has been held that even when the court does not have power to adjudicate a claim, it may still 'approve release of that claim as a condition of settlement of [an] action [before it].' " (*In re Corrugated Container Antitrust Litigation* (5th Cir. 1981) 643 F.2d 195, 221, citations omitted, italics added.)

■ "[A] judgment pursuant to a class settlement can bar [subsequent] claims based on the allegations underlying the claims in the settled class action. This is true even though the precluded claim *was not presented*, and *could not have been presented*, in the class action itself." (*In re Prudential Ins.*

*Co. of America* (3d Cir. 2001) 261 F.3d 355, 366, italics added; accord, *In re General American Life Ins. Sales Prac. Lit.* (8th Cir. 2004) 357 F.3d 800, 804–805.)

As a federal court stated in language relevant here: "Plaintiffs had an opportunity to opt out of the class and litigate their state claims in state court; more pertinent, they knew that settlements compromising class members' state claims had been negotiated before they were asked to opt out. Plaintiffs, however, wanted to participate in the class, share in the fruits of the class'[s] settlement negotiations, and still be free to litigate their state claims. . . . [T]he objectors felt entitled to the bird in the hand while pursuing the flock in the bush. . . . If the objectors felt they could do this, that was their prerogative but in so doing they accepted the risk that they would be precluded." (*In re Corrugated Container Antitrust Litigation, supra*, 643 F.2d at pp. 222–223, citation omitted.)

 The term "all claims" includes "claims that are not expressly enumerated in the release." (*Jefferson v. Department of Youth Authority* (2002) 28 Cal.4th 299, 305 [121 Cal.Rptr.2d 391, 48 P.3d 423].) Thus, the *Augustus* settlement agreement released "PAGA claims" without mentioning the PAGA by name. It is immaterial that *Augustus* did not include a PAGA cause of action. (See *Jefferson v. Department of Youth Authority, supra*, 28 Cal.4th at pp. 303–306 [release of "all claims" in workers' compensation settlement agreement barred sex discrimination claim under California Fair Employment and Housing Act (Gov. Code, §§ 12900–12996)].) Nor does it matter that none of the settlement proceeds in *Augustus* were allocated to PAGA claims. (See *Nordstrom Com. Cases* (2010) 186 Cal.App.4th 576, 589 [112 Cal.Rptr.3d 27].)

Reduced to its essence, the *Augustus* settlement agreement released "*all claims . . . of any kind for . . . penalties . . .* arising from the alleged violation of any provision of common law, *California law* and/or Federal law *which* [*were*] *or could have been raised as part of the Plaintiffs' claims.*" (Italics added.) This provision constitutes a standard general release, barring any claims based on conduct occurring before its effective date. In *Basis Technology Corp. v. Amazon.com, Inc.* (2008) 71 Mass.App.Ct. 29 [878 N.E.2d 952], the court noted: "The provision for mutual releases contemplated 'all claims that were brought, or that could have been brought, or that have been threatened to be brought, by either party against the other.' It resembled the typical general release used by experienced counsel to resolve litigation . . . ." (*Id.*, 878 N.E.2d at pp. 959–960; accord, *Dupuy v. McEwen* (7th Cir. 2007) 495 F.3d 807, 809 ["the plaintiffs had expressly released the defendant from all claims 'which arose or could have been raised' in the suit; that was a general release"].)

In *Augustine Medical v. Progressive Dynamics* (Fed.Cir. 1999) 194 F.3d 1367, the parties agreed to release " 'any and all claims that were or could have been asserted by [the plaintiff] in the [present lawsuit].' " (*Id.* at p. 1369, italics omitted.) Nevertheless, the plaintiff filed a subsequent suit against the defendant. The defendant prevailed on summary judgment based on the release. As the court of appeals explained: "Our interpretation of the language of the Settlement Agreement is consistent with judicial interpretation of general releases in settlement agreements. Both parties agree that their settlement provided a general release containing very broad language, such as 'release and forever discharge,' 'any and all manner of action or actions,' 'relating to any acts, omissions or statements made by [the defendant],' and 'including, but not limited to, *any and all claims that were or could have been asserted by [the plaintiff] in the [present lawsuit].*' General language such as these phrases have consistently been held by the courts to constitute a waiver of . . . all 'claims based upon events occurring prior to the date of the release.' " (*Id.* at p. 1372, italics added; accord, *Imprimis Investors LLC v. U.S.* (2008) 83 Fed.Cl. 46, 50, 62 [release of "all claims . . . asserted or that could have been asserted in the Actions" " 'bars claims based upon events occurring prior to the date of the release' "]; *D'Andrea v. University of Hawaii* (D. Hawaii 2010) 686 F.Supp.2d 1079, 1084–1085, 1087–1090 [release of " 'claims that were asserted and could have been asserted in the Complaint,' " executed by parties in resolving university professor's 2007 suit for mistreatment, barred his 2009 action for wrongful suspension and termination because, at time of first suit, university had threatened to suspend and terminate him]; *Cole v. Powell* (D.D.C. 2009) 605 F.Supp.2d 20, 24 ["settlement agreements releasing [federal discrimination] claims that were or could have been alleged in the underlying case 'are routinely enforced' "]; *Republic Ins. v. Davis Systems of Pittsburgh* (1995) 543 Pa. 186 [670 A.2d 614, 615–616] [affirming grant of defendant's motion for summary judgment, barring subsequent suit where release in prior action covered " 'any and all actions, cause of action, [and] claims, . . . including, but not limited to, all matters which have been raised or which could have been raised, in the action' " (italics omitted)].)

■■■ A general release—covering "all claims" that were or could have been raised in the suit—is not uncommon in class action settlements. (See, e.g., *Dupuy v. McEwen, supra*, 495 F.3d at p. 809; *Pelletz v. Weyerhaeuser Co.* (W.D.Wn. 2009) 255 F.R.D. 537, 545; *Serventi v. Bucks Technical High School* (E.D.Pa. 2004) 225 F.R.D. 159, 164; *Dornberger v. Metropolitan Life Ins. Co.* (S.D.N.Y. 2001) 203 F.R.D. 118, 141–142; *In re Cendant Corp. Securities Litigation* (D.N.J. 2000) 109 F.Supp.2d 235, 242; *Lelsz v. Kavanagh* (N.D.Tex. 1995) 903 F.Supp. 1037, 1041; *Knuth v. Beneficial Washington, Inc.* (2001) 107 Wn.App. 727 [31 P.3d 694, 697].) As one court observed: "[T]he Settlement Agreement states that the Parties 'enter this agreement in order to

resolve all disputes among them which were or could have been raised in the Action . . . .' Clearly, the Settlement Agreement was meant to be a final resolution of all issues." (*Lelsz v. Kavanagh, supra*, at p. 1041.)

"[Releases] of this kind are not to be shorn of their efficiency by any narrow, technical and close construction. . . . If parties intend to leave some things open and unsettled their intent so to do should be made manifest." (*United States v. Wm. Cramp & Sons Co.* (1907) 206 U.S. 118, 128 [51 L.Ed. 983, 27 S.Ct. 676, 678–679].) "The rule for releases is that absent special vitiating circumstances, a general release bars claims based upon events occurring prior to the date of the release." (*Johnson, Drake & Piper, Inc. v. U.S.* (1976) 209 Ct.Cl. 313 [531 F.2d 1037, 1047] (*per curiam*).)

The *Augustus* settlement agreement recognized a limited exception for additional litigation, specifying a list of existing cases that involved alleged meal and rest period violations. Villacres's suit—this case—was not among them. There was no *general* exception for meal and rest period violations that would permit Villacres to seek applicable PAGA penalties. "Review of the circumstances confirms our interpretation that the release was designed to extinguish *all claims extant among the parties.* . . . [I]t is significant that the parties were able to, and did, fashion language memorializing their agreement to preserve identified claims from the operation of the release when such was their intention . . . ." (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1168 [6 Cal.Rptr.2d 554], italics added.)

 "[T]he release of 'all claims and causes of action' must be given a comprehensive scope. [¶] If courts did not follow this rule, 'it [would be] virtually impossible to create a general release that . . . actually achieve[d] its literal purpose' . . . , and language releasing all claims would be inherently misleading, causing unfair surprise to parties that offer payment on the reasonable expectation that all claims are settled, only later to face continuing litigation. . . . Moreover, if courts did not enforce general releases, an employer . . . seeking a comprehensive settlement, would have to struggle to enumerate all claims *the employee might plan to allege.* The employer would never be able to know for sure that it had thought of every claim, and therefore it would never be able to put a definitive end to the matter. Employers would then be disinclined to enter into settlements, because certainty as to the full extent of liability is one factor that motivates employers to choose settlement over litigation." (*Jefferson v. Department of Youth Authority, supra*, 28 Cal.4th at p. 306, citations omitted, italics added.)

In short, the release in the *Augustus* settlement agreement does not permit Villacres to escape the bar of res judicata. (See *Waisbein v. UBS Financial Services Inc.* (N.D.Cal., Dec. 5, 2007, No. C-07-2328 MMC) 2007 WL

4287334, pp. *1–*3 & fn. 2 [release in non-PAGA action barred subsequent PAGA suit seeking penalties for Labor Code violations—concerning meal and rest periods—not alleged in prior action].) If Villacres thought the release was too broad, he could have sought to remedy that problem through objection or intervention, and, if not satisfied with the result, he could have appealed. (See *Toms v. Allied Bond & Collection Agency, Inc.* (4th Cir. 1999) 179 F.3d 103, 105–107; *Froeber v. Liberty Mutual Ins. Co.* (2008) 222 Or.App. 266 [193 P.3d 999, 1001–1008].) Alternatively, he could have simply opted out of the class and rendered the scope of the release irrelevant in this action.

Villacres relies on *Consumer Advocacy Group, Inc. v. ExxonMobil Corp., supra,* 168 Cal.App.4th 675, for the contention the *Augustus* settlement agreement did not bar PAGA claims. His reliance is misplaced. There, an organization known as Communities for a Better Environment sued ExxonMobil under the Safe Drinking Water and Toxic Enforcement Act of 1986 (Act) (Health & Saf. Code, §§ 25249.5–25249.13), alleging ExxonMobil had contaminated sources of drinking water by leaking toluene and benzene. That action settled, resulting in an agreement releasing " '[a]ny and all . . . claims that could have been asserted in this action arising out of any alleged discharge or release of *benzene and/or toluene.*' " (*Consumer Advocacy Group,* at p. 688.) In a separate suit, another organization, Consumer Advocacy Group (CAG), alleged that ExxonMobil had violated the Act by contaminating drinking water sources with *toluene, benzene, and lead.* ExxonMobil moved for summary judgment in the CAG suit, invoking the doctrine of res judicata based on the prior settlement.

The trial court granted the motion. The Court of Appeal reversed, stating: "CAG distinguishes the primary right at issue by pointing out that its complaint alleged violations based on benzene, toluene, and lead, while [the] complaint and settlement [in the other action] concerned benzene and toluene, but not lead. ExxonMobil responds by asserting that the primary right at issue is the leaking of petroleum products into water sources, rather than the leaking of any particular gasoline constituent. *But the settlement is specific in covering only benzene and toluene; it does not contain language permitting a broader application. . . .*

"ExxonMobil argues, '[T]he Settlement Agreement in the [other] Action specifically encompasses the release of all gasoline constituents, which includes lead.' . . . [The] general language [of the agreement] does not specifically encompass 'all gasoline constituents.' . . .

". . . [W]e are not holding that a single settlement agreement cannot resolve claims relating to all gasoline constituents. Instead, we conclude that this settlement does not do so.

"While ExxonMobil is not entitled to [a ruling] that CAG's entire action is barred by res judicata, this is only because the [other suit] did not resolve claims relating to lead." (*Consumer Advocacy Group, Inc. v. ExxonMobil Corp., supra*, 168 Cal.App.4th at pp. 688–689, italics added.)

*Consumer Advocacy Group* is inapposite. The language of the *Augustus* settlement agreement is significantly broader than the narrow release in *Consumer Advocacy Group*. In *Augustus*, the parties released "all . . . claims of any kind for wages, *penalties*, interests, costs and attorneys' fees arising from the alleged *violation of any provision of . . . California law* and/or Federal law *which* [*were*] *or could have been raised as part of the Plaintiffs' claims*." (Italics added.) Thus, "[t]he essential and explicit purpose of the settlement agreement [in *Augustus*] was to 'resolve the disputes between the parties . . . .' " (*Citizens for Open Access etc. Tide, Inc. v. Seadrift Assn., supra*, 60 Cal.App.4th at p. 1068.)

Villacres also argues the *Augustus* settlement agreement could not release PAGA claims (§§ 2699–2699.5) or an employee's claim to indemnification for business expenses and losses (§§ 2800, 2802) because those claims involve unwaivable statutory rights. (See *Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 950–952 [81 Cal.Rptr.3d 282, 189 P.3d 285]; *Franco v. Athens Disposal Co., Inc., supra*, 171 Cal.App.4th at pp. 1290–1294, 1299–1303; see also §§ 219, 2804.) But defendants did not entice or force Villacres or other class members to waive future claims or, for that matter, to waive any claims without compensation. To the contrary, in *Augustus*, the parties amicably resolved *past* alleged violations, and defendants *compensated* the class members for those claims. A release of that nature is legally distinguishable from an unlawful waiver of statutory rights. (See *Chindarah v. Pick Up Stix, Inc.* (2009) 171 Cal.App.4th 796, 801–803 [90 Cal.Rptr.3d 175] [settlement of bona fide wage dispute does not violate statute prohibiting release of unwaivable pay claims].) Were it otherwise, a suit alleging a wage claim could be resolved only through a dispositive motion or a trial. Nor does Villacres contend his PAGA claims are based on Labor Code violations that occurred *after* the period covered by the *Augustus* settlement agreement: He was terminated on April 16, 2007, four months *before* the end of the class period in *Augustus*.

We therefore conclude this suit alleges the same cause of action asserted and settled in *Augustus*.

C. *Privity*

Villacres argues he was not in privity with the *Augustus* plaintiffs. We disagree. He was a member of the class in *Augustus*. In that capacity, the

doctrine of res judicata applied to him, and he is bound by the *Augustus* settlement agreement. (See *Louie v. BFS Retail & Commercial Operations, LLC, supra,* 178 Cal.App.4th at p. 1555; *Johnson v. American Airlines, Inc., supra,* 157 Cal.App.3d at p. 431.) "[T]he preclusive effect of judgments depends not on whether the action is brought on behalf of the general public, but on whether those sought to be bound by a judgment are named parties, are in privity with named parties, or are *members of a class certified under class action procedures.*" (*Arias v. Superior Court, supra,* 46 Cal.4th at p. 984, fn. 6, italics added.) In *Augustus,* the superior court certified a class that included Villacres as a member.

On a similar point, Villacres contends the State of California is, as a legal matter, the actual plaintiff here. Not so. The PAGA authorized Villacres to file this action "on behalf of himself . . . and other current or former employees." (§ 2699, subd. (a).) The act "empowers or deputizes an aggrieved employee to sue for civil penalties . . . as an alternative to enforcement by the [State]." (*Dunlap v. Superior Court* (2006) 142 Cal.App.4th 330, 337 [47 Cal.Rptr.3d 614]; see § 2699, subd. (a).) "[A] PAGA claim can only be filed where the State has made an affirmative decision not to pursue the matter, either by deciding not to investigate at all or by investigating and then deciding the employer should not be cited and subjected to penalties." (*Waisbein v. UBS Financial Services Inc., supra,* 2007 WL 4287334 at p. *2; see § 2699.3.) " '[The] PAGA [is] a powerful tool for aggrieved *employees.*' " (*Franco v. Athens Disposal Co., Inc., supra,* 171 Cal.App.4th at p. 1302, italics added.)

### D. *Policy Considerations*

We would decline to apply res judicata " 'if injustice would result or if the public interest requires that relitigation not be foreclosed.' " (*Dunkin v. Boskey, supra,* 82 Cal.App.4th at p. 181.) "[But] we discern no public policy reason for refusing to invoke the doctrine of res judicata. Precluding the present suit by [Villacres] will not result in any manifest injustice to [him or those he seeks to represent or in any] adverse impact upon the public. . . . We are convinced, . . . based upon the particular and rather unique circumstances presented to us, that the claims asserted by [Villacres] in the present case were commendably advanced during negotiation and [approval] of the settlement agreement [in *Augustus*]." (*Citizens for Open Access etc. Tide, Inc. v. Seadrift Assn., supra,* 60 Cal.App.4th at p. 1074.) To allow the multiplicity of suits Villacres proposes would unnecessarily burden the courts and deny the settling defendant in *Augustus* the finality for which it bargained.

In sum, defendants have made a prima facie showing that (1) Villacres's PAGA claims constitute the same cause of action alleged and settled in *Augustus,* and (2) Villacres, as a member of the class in *Augustus,*

was in privity with the *Augustus* plaintiffs. Villacres has not created a disputed issue of material fact on either point. Accordingly, the trial court properly applied the doctrine of res judicata and granted defendants' motion for summary judgment.

## III

## DISPOSITION

The order and judgment are affirmed.

Johnson, J., concurred.

**CHANEY, J.,** Dissenting.—The *Augustus* class action (*Augustus v. American Commercial Security Services, Inc.* (Super. Ct. L.A. County, 2008, No. BC347914) (*Augustus*)) ended with a settlement agreement, approved by Judge Minning, that released all claims that could have been raised "as part of" the plaintiffs' claims. In the Carlos Villacres action, Judge Lichtman granted summary judgment on the ground that Villacres's claims fell into the "category of claims that could have been asserted in" the *Augustus* matter. The sole issue on appeal is whether a triable issue exists as to the scope of the release. It is ultimately a matter of contract interpretation.

*Comparing the Lawsuits*

The *Augustus* plaintiffs alleged their employers failed to compensate employees for overtime and split shifts, in violation of Labor Code sections 510 and 1194 (undesignated statutory references are to this code) and section 11040 of title 8 of the California Code of Regulations, and by doing so also violated the unfair competition law. They sought damages, interest, attorney fees and costs, civil penalties under section 558, an injunction, and such other relief as the court may deem appropriate. The case settled, the defendants agreeing to set up a $1 million maximum "general pool" of "unpaid overtime wages" from which to pay $1.56 per week of employment to those with valid claims, and a $750,000 maximum "penalty pool" from which to pay $1.35 per week of employment. The defendants also agreed to pay the plaintiffs' attorney fees and costs (up to $730,000) and $20,000 in incentive awards to the class representatives.

In exchange, the defendants were released from liability on "any and all claims . . . or causes of action of any kind . . . which have been or could have been asserted against the Releasees arising out of or related to all claims for wages, overtime pay, pay for all time allegedly worked but not compensated, and all other claims of any kind for wages, penalties, interest, costs and attorneys' fees arising from the alleged violation of any provision of common

law, California law and/or Federal law which was or could have been raised *as part of the Plaintiffs' claims . . . .*" (Italics added.)

Notice of the settlement was sent to the putative class. The content of the notice is not in the record. The class administrators received 2,106 claim forms. The record does not indicate how much was paid on these claims, but the maximum payout per class member would have been $81.12 in "unpaid overtime wages" and $70.20 in penalties per year worked ($1.56 and $1.35 multiplied by 52, respectively).

In its order preliminarily approving the settlement the trial court found the class notice "fully and accurately" informed the class of "all material elements" of the proposed settlement agreement. In its order granting final approval, the trial court characterized the released claims as "claims for unpaid wages, interest, penalties and fees, including but not limited to overtime, split shift premiums, 'off-the-clock' work [and] wai[t]ing time penalties . . . ." No mention was made of the release of claims that "could have been raised as part of" the plaintiffs' claims.

In this action, plaintiff alleged defendants failed to pay overtime wages, provide complete wage statements, provide meal or rest periods or compensation in lieu thereof, reimburse him for the cost of a uniform it required him to purchase, or pay wages on a timely basis. He sought damages, interest, attorney fees and costs, civil penalties under the PAGA, and such other relief as the court may deem appropriate.

*The Villacres Trial Court Action*

Defendants moved for summary judgment, arguing plaintiff's causes of action had been raised and settled in *Augustus*. This is so, they argued, because plaintiff's claims and the *Augustus* claims all involved "infringement of the same primary right—failure to pay wages . . . ." In essence, defendants argued all employment claims involve the same primary right—the right to receive compensation for work—and thus constitute one cause of action.

In opposition, plaintiff argued his claims relating to meal periods, rest periods, unreimbursed business expenses, and wage statements presented different causes of action from the *Augustus* plaintiffs' claims for unpaid overtime and split shifts. Though admitting his overtime claim was duplicative, he nevertheless argued it was not barred by res judicata because it involved "a different primary right—that of a PAGA action."

In their reply, defendants maintained that "all claims" without limitation had been released.

The trial court granted defendants' motion for summary judgment on the ground that plaintiff's claims "could have been asserted in" the *Augustus* matter. The trial court cited no evidence for this finding, and indeed there was none, as defendants had not argued plaintiff's claims could have been raised in *Augustus*; they argued the claims were actually raised there, because all employment compensation claims constitute one cause of action.

On appeal, defendants continue to maintain that all employment compensation claims constitute the same cause of action.

*Plaintiff's Overtime Claim Is Barred*

No triable issue exists as to whether plaintiff's cause of action for failure to pay overtime is barred by res judicata because the *Augustus* plaintiffs sued on the same cause of action, settled the lawsuit, and obtained a stipulated judgment.

The doctrine of res judicata operates to bar multiple litigation "arising out of the same subject matter of a prior action as between the same parties or parties in privity with them." (*Gates v. Superior Court* (1986) 178 Cal.App.3d 301, 308 [223 Cal.Rptr. 678]; see *id.* at p. 311; *Frommhagen v. Board of Supervisors* (1987) 197 Cal.App.3d 1292, 1299 [243 Cal.Rptr. 390].) The doctrine has two effects. "First, where the causes of action and the parties are the same, a prior judgment is a complete bar in the second action. This is fundamental and is everywhere conceded." (*Sutphin v. Speik* (1940) 15 Cal.2d 195, 201 [99 P.2d 652].) "In its secondary aspect res judicata has a limited application to a second suit between the same parties, though based on a different cause of action. The prior judgment is not a complete bar, but it 'operates as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action.' (*Todhunter* v. *Smith* [(1934)] 219 Cal. 690, 695 [28 P.2d 916].) This aspect of the doctrine of res judicata, now commonly referred to as the doctrine of collateral estoppel, is confined to issues actually litigated." (*Clark v. Lesher* (1956) 46 Cal.2d 874, 880 [299 P.2d 865]; see *Sutphin v. Speik, supra,* 15 Cal.2d at pp. 201–202.)

"California law defines a cause of action 'by focusing on the "primary right" at stake: if two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery. [Citations.] A cause of action is based upon the nature of a plaintiff's injury. The cause of action, as it appears in the complaint when properly pleaded, will therefore always be the *facts* from which the plaintiff's primary right and the

defendant's corresponding primary duty have arisen, together with the facts which constitute the defendant's delict or act of wrong. [Citation.]' [Citation.]" (*Tensor Group v. City of Glendale* (1993) 14 Cal.App.4th 154, 160 [17 Cal.Rptr.2d 639].)

A stipulated judgment is res judicata as to those issues it embraces. (*Ellena v. State of California* (1977) 69 Cal.App.3d 245, 260 [138 Cal.Rptr. 110]; *California State Auto. Assn. Inter-Ins. Bureau v. Superior Court* (1990) 50 Cal.3d 658, 664 [268 Cal.Rptr. 284, 788 P.2d 1156] ["a stipulated judgment may properly be given collateral estoppel effect, at least when the parties manifest an intent to be collaterally bound by its terms."]; *Avery v. Avery* (1970) 10 Cal.App.3d 525, 529 [89 Cal.Rptr. 195] [a judgment entered on stipulation has the same effect as if the action were tried on its merits].)

Because plaintiff was a member of the *Augustus* class and did not opt out, he is bound by the judgment in that lawsuit and his cause of action for failure to pay overtime is extinguished. It does not matter that he employs a different mechanism, the PAGA (Labor Code Private Attorneys General Act of 2004; § 2698 et seq.), to enforce the right to overtime or that he seeks different penalties than were sought in *Augustus*. A cause of action is defined by the parties' rights, not by the mechanism by which those rights are enforced or the remedies sought.

*Plaintiff's Nonovertime Claims Are Not Barred*

Plaintiff's claims regarding wage statements, meal and rest periods (or compensation in lieu of them), expense reimbursement, and the timeliness of wages (the nonovertime claims) are not barred by res judicata because they involve neither the same causes of action as were asserted in *Augustus* nor the same issues that were actually litigated and determined in that action.

*Different causes of action*

That plaintiff's nonovertime claims do not involve the same causes of action as the *Augustus* plaintiffs' overtime and split-shift claims should be plain. A cause of action is identified by examining one party's right and the other's obligation. An employee's right to receive premium payment for overtime stems from the Legislature's determination that too much work in a day or week can be harmful. (Stats. 1999, ch. 134, § 2, p. 1820 ["Numerous studies have linked long work hours to increased rates of accident and injury," and "[f]amily life suffers when either or both parents are kept away from home for an extended period of time on a daily basis"].) It is not the same as his or her right to receive wages promptly, to receive detailed and accurate wage data, to be reimbursed for required expenses, or to receive

meal and rest breaks. (See *California Manufacturers Assn. v. Industrial Welfare Com.* (1980) 109 Cal.App.3d 95, 113, 115 [167 Cal.Rptr. 203] [purpose of wage data requirement is to help employee in the resolution of disputes and dealings with the IRS; purpose of meal and rest period requirements is to promote employee health and welfare].)

Defendants' argument that plaintiff's nonovertime claims were largely the same as those presented in *Augustus* and that both lawsuits were triggered by the infringement of the same primary right—failure to pay wages—is therefore meritless.

*Different issues*

The question remains whether issues (as opposed to causes of action) in this lawsuit were actually litigated and determined *Augustus*. The scope of issues actually litigated and determined is defined by the stipulated judgment. (*Ellena v. State of California, supra,* 69 Cal.App.3d at p. 260 ["res judicata effect extends only to those issues embraced within the consent judgment"].)

"In a stipulated judgment, or consent decree, litigants voluntarily terminate a lawsuit by assenting to specified terms, which the court agrees to enforce as a judgment. [Citations.] . . . [S]tipulated judgments bear the earmarks both of judgments entered after litigation and contracts derived through mutual agreement: '[C]onsent decrees "have attributes both of contracts and of judicial decrees"; *a dual character that has resulted in different treatment for different purposes.*' [Citation.] . . . [T]he issue before us is 'not whether we can label a consent decree as a "contract" or a "judgment," for we can do both.' [Citation.]" (*California State Auto. Assn. Inter-Ins. Bureau v. Superior Court, supra,* 50 Cal.3d at pp. 663–664.) "[A] stipulated judgment is indeed a judgment; entry thereof is a judicial act that a court has discretion to perform. Although a court may not add to or make a new stipulation without mutual consent of the parties [citation], it may reject a stipulation that is contrary to public policy [citation] . . . . 'While it is entirely proper for the court to accept stipulations of counsel that appear to have been made advisedly, and after due consideration of the facts, the court cannot surrender its duty to see that the judgment to be entered is a just one, nor is the court to act as a mere puppet in the matter.' [Citation.]" (*Id.* at p. 664.)

A class action settlement, where a class representative purports to settle third party claims, is subject to particular scrutiny, because the trial court, as guardian of the class, must independently satisfy itself that the consideration received for a release of class claims is reasonable in light of the magnitude of the release. (*Clark v. American Residential Services LLC* (2009) 175 Cal.App.4th 785, 799–800 [96 Cal.Rptr.3d 441]; *Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 129 [85 Cal.Rptr.3d 20].)

The *Augustus* settlement released all claims that "could have been raised as part of the Plaintiffs' claims." We must determine the meaning of the quoted phrase to define the extent to which the release operates as an estoppel.

"[T]he interpretation of a release or settlement agreement is governed by the same principles applicable to any other contractual agreement." (*General Motors Corp. v. Superior Court* (1993) 12 Cal.App.4th 435, 439 [15 Cal.Rptr.2d 622].) Interpretation of a contract, including resolution of any ambiguity, is solely a judicial function. (*MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 647–648 [3 Cal.Rptr.3d 228, 73 P.3d 1205].) The primary goal of contract interpretation is to give effect to the mutual intent of the parties. (Civ. Code, § 1636; *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545].) That intent is to be determined solely from the written provisions of the contract if possible (Civ. Code, § 1639; *Bank of the West*, at p. 1264; *AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 821–822 [274 Cal.Rptr. 820, 799 P.2d 1253]), but also considering "the circumstances under which the contract was made and the matter to which it relates." (*American Alternative Ins. Corp. v. Superior Court* (2006) 135 Cal.App.4th 1239, 1245 [37 Cal.Rptr.3d 918].) Specific language must be interpreted in context and with regard to its intended function and the structure of the agreement as a whole. (Civ. Code, § 1641; *La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.* (1994) 9 Cal.4th 27, 37 [36 Cal.Rptr.2d 100, 884 P.2d 1048]; *Mirpad, LLC v. California Ins. Guarantee Assn.* (2005) 132 Cal.App.4th 1058, 1069 [34 Cal.Rptr.3d 136].) "Contractual language is ambiguous if it is susceptible to more than one reasonable interpretation in the context of the policy as a whole." (*American Alternative, supra*, 135 Cal.App.4th at p. 1245.) "In determining whether an ambiguity exists, a court should consider not only the face of the contract but also any extrinsic evidence that supports a reasonable interpretation." (*Id.* at p. 1246.)

The phrase "could have been raised as part of the Plaintiffs' claims" is similar in wording to the well-established res judicata principle that a judgment is binding not only as to a claim actually raised, but also as to those matters that might have been raised in support of the claim actually raised. (E.g., *Price v. Sixth District Agricultural Assn.* (1927) 201 Cal. 502, 511 [258 P. 387]; *Pacific Mut. Life Ins. Co. v. McConnell* (1955) 44 Cal.2d 715, 724–725 [285 P.2d 636]; *Amin v. Khazindar* (2003) 112 Cal.App.4th 582, 590 [5 Cal.Rptr.3d 224].) "In other words, when an issue has been litigated all inquiry respecting the same is foreclosed, not only as to matters heard but also as to matters that could have been heard in support of or in opposition thereto. . . . '. . . [E]ven tho the causes of action be different, if the second

action involves a right, title or issue as to which the judgment in the first action is a conclusive adjudication, the estoppel so far as that right, title or issue is concerned must likewise extend to every matter which was or might have been urged to sustain or defeat the determination actually made.' [Citation.]" (*Price v. Sixth Dist. Agricultural Assn., supra*, 201 Cal. at p. 511.)

The question is whether the phrase "could have been raised as part of the Plaintiffs' claims" means the same thing in the *Augustus* settlement as it would in the res judicata context. Though no party submitted evidence on the issue (which itself necessitated that defendants' motion for summary judgment be denied), substantial evidence suggests the *Augustus* parties intended to release only claims that related to the plaintiffs' overtime and split-shift claims. First, as noted, the release language mirrors the phrasing of the res judicata precept. This commonality itself suggests the *Augustus* parties intended the release to preclude, in accordance with res judicata principles, only claims that had already been asserted or those that could have been asserted to support claims already asserted. If the parties had intended a broader release they could have released "all claims," or even "all claims that could have been raised" in the *Augustus* litigation, not merely claims that could have been raised "as part of" the plaintiffs' claims.

Second, the fund created by the settlement was designated for payment of "unpaid overtime wages." No mention was made of payment for other claims.

Third, when characterizing the release, Judge Minning said it pertained to "claims for unpaid wages, interest, penalties and fees, including but not limited to overtime, split shift premiums, 'off-the-clock' work [and] wai[t]ing time penalties . . . ." He said nothing about a release of other Labor Code claims.

Fourth, the parties had good reason to install a limited release—they needed court approval of the settlement. Class representatives have no standing to release *all* claims, and overbroad general releases should be avoided. "Any attempt to include in a class settlement terms which are outside the scope of the operative complaint should be closely scrutinized by the trial court to determine if the plaintiff genuinely contests those issues and adequately represents the class." (*Trotsky v. Los Angeles Fed. Sav. & Loan Assn.* (1975) 48 Cal.App.3d 134, 148 [121 Cal.Rptr. 637].) "[T]o exercise this power of careful scrutiny over the inclusion of additional claims in the

settlement, the trial court has the right to expect the settling parties to disclose the effect of such terms at the time the proposed settlement is brought to the attention of the court." (*Ibid.*) Judge Minning presumably would have found a release of all conceivable claims to be overbroad.

Finally, when defendants moved for summary judgment, they did not argue that Villacres's nonovertime causes of action could have been raised in the *Augustus* litigation. (And nowhere in their brief on appeal do they argue that.)

All of this suggests that the phrase "could have been raised as part of" means "relevant to," as it would in the res judicata context. If that is the case, the judgment must be reversed because no evidence suggests Villacres's nonovertime claims were in any way relevant to the *Augustus* plaintiffs' overtime or split-shift claims.

I will also note that because the notice to *Augustus* class members is not part of the record on appeal, we have no way of knowing whether class members were informed that the settlement released (as defendants argue) all employment-related claims. If the class notice did not inform class members of all claims released, they could not be said to be in privity with the class representatives as to any claims for which notice of a release was not given. " '[T]he determination of privity depends upon the fairness of binding appellant with the result obtained in earlier proceedings in which it did not participate. [Citation.] " 'Whether someone is in privity with the actual parties requires close examination of the circumstances of each case.' " ' " (*Rodgers v. Sargent Controls & Aerospace* (2006) 136 Cal.App.4th 82, 91 [38 Cal.Rptr.3d 528].) "This requirement of identity of parties or privity is a requirement of due process of law." (*Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 874 [151 Cal.Rptr. 285, 587 P.2d 1098].) Here, the only evidence of what class members were told about the release is the trial court's finding that the notice "fully and accurately" informed the class of "all material elements" of the proposed settlement agreement. But it is not clear that Judge Minning himself construed the release in the manner defendants construe it here, because when he characterized the released claims in his order granting final approval he made no mention of the release of claims that "could have been raised as part of" the *Augustus* plaintiffs' claims.

Under another possible (but I submit unlikely) reading, the phrase "could have been raised" refers to the availability of a *procedure* to make a claim in the *Augustus* action, e.g., by objection or intervention. If that is the case, for

the release to be meaningful it must refer only to a necessarily successful procedure, because a release of *any* claim that can be articulated in an objection or complaint in intervention, even frivolously, would be truly limitless. But no evidence suggests Villacres's nonovertime claims could have been interposed as a matter of right in *Augustus*, either by intervention or objection. A party may not intervene as a matter of right in a class action unless a "provision of law confers an unconditional right to intervene." (Code Civ. Proc., § 387, subd. (b).) No such provision exists here. Though a person who "claims an interest relating to the property or transaction which is the subject of the action and . . . is so situated that the disposition of the action may as a practical matter impair or impede that person's ability to protect that interest" may seek to intervene, the court need not permit intervention if "that person's interest is adequately represented by existing parties." (*Ibid.*) In a class action, the proposed intervenor's interests are, by definition, adequately represented by the class representatives.

As a practical matter, intervention in a class action to bring a separate claim is permitted rarely, if at all. A class may be certified only where a well-defined community of interest exists among class members. (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 [17 Cal.Rptr.3d 906, 96 P.3d 194].) The "community of interest" requirement embodies three factors: "(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class. [Citation.]" (*Ibid.*) Questions of fact and law are "predominant" if the factual and legal issues "common to the class as a whole [are] sufficient in importance so that their adjudication on a class basis will benefit both the litigants and the court." (*Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 811 [94 Cal.Rptr. 796, 484 P.2d 964].) A class member would not be permitted to intervene where his or her separate claim threatens to destroy the community of interest. Even if the trial court were to contemplate establishing a subclass, it would not do so to accommodate a single class member's separate claim.

Here, no evidence suggests the *Augustus* plaintiffs or any class members were deprived of proper wage statements, meal or rest periods, expense reimbursement or prompt payment. Therefore, no evidence suggests separate claims based on those delicts would have been entertained in the *Augustus* litigation, either by intervention or establishing a subclass. Any motion by a class member to intervene to pursue such claims would have been denied because their presence would threaten to destroy the community of interest required to maintain class treatment. For similar reasons, a class member will not be heard either to assert his individual causes of action or expand the class by objection, as to do so would undermine the community of interest and destabilize the settlement.

Even if intervention and objection were available in the abstract—and because no evidence was submitted on the issue we can deal here only in abstracts—I submit it is unlikely the *Augustus* parties grounded the release of potentially significant claims on the hypothetical availability of such procedures.

In sum, on the issue of whether the *Augustus* settlement was intended to release claims unrelated to those asserted in that action, such as Villacres's claims for damages arising from unreimbursed expenses, missed meal and rest periods, and inaccurate wage statements, no evidence exists other than the settlement language itself. But as I have shown, that language is at least ambiguous as to the meaning urged by defendants—that the release of any claim that "could have been raised as part of the Plaintiffs' claims" released any individual claim possessed by a class member, regardless of its relevance to the plaintiffs' claims or the likelihood that the trial court would have entertained it.

## Conclusion

Defendants brought a motion for summary judgment that ignored the dispositive issue—the meaning in the *Augustus* release of the phrase "could have been raised as part of the Plaintiffs' claims"—and relied on two fictions—that all employment compensation claims constitute the same cause of action and that the *Augustus* settlement released "all claims." Opposing the motion, plaintiff relied on a fiction of his own—that a claim under the PAGA is a separate cause of action.

With little guidance from the parties, Judge Lichtman, one of the state's preeminent class action jurists, effected what is likely the appropriate final result in this case: he shut down the lawsuit because it is duplicative of at least one other. But he did so by creating another fiction—that Villacres's causes of action could have been asserted as part of the *Augustus* plaintiffs' claims. The better course would have been to employ the procedural tools of relation, consolidation, coordination, abatement and, yes, remedies flowing from the operation of res judicata.

For example, it appears defendant's employment practices are being challenged in four other lawsuits. At oral argument defense counsel intimated that the claims presented in those actions largely duplicate those presented here. If they do, this action could have been abated until resolution of the earlier

actions. Or it could have been related to or consolidated or coordinated with them. Once the earlier cases were resolved, the claims at issue there could have been compared with plaintiff's claims here, and the duplicative claims barred under res judicata.

I would therefore reverse.

Appellant's petition for review by the Supreme Court was denied February 16, 2011, S188659.