Filed 11/25/14  Jayaweera v. Lansberg CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ASOKA JAYAWEERA et al.,<br><br>    Plaintiffs, Cross-defendants and Appellants,<br><br>    v.<br><br>JUSTIN J. LANSBERG et al.,<br><br>    Defendants, Cross-complainants and Respondents. | D065800<br><br><br>(Super. Ct. No. CIVDS1014086) |

APPEAL from a judgment and order of the Superior Court of San Bernardino County, Bryan F. Foster, Judge.  Affirmed.

Asoka Jayaweera and Shantha K. Jayaweera, in pro. per.

Stern & Goldberg and Alan N. Goldberg for Cross-complainants and Respondents Justin J. Lansberg and Stephanie Lansberg.

Asoka Jayaweera and Shantha K. Jayaweera appeal the judgment denying them relief on their first amended complaint for quiet title and interference with easement, and

granting relief to defendants Justin Lansberg and Stephanie Lansberg[1] on their cross-complaint for quiet title, declaratory and injunctive relief, and the order awarding attorney fees to the Lansbergs.

The Jayaweeras contend there was insufficient evidence to support the trial court's ruling regarding their causes of action, and the court erroneously awarded the Lansbergs attorney fees.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*The Jayaweeras' First Lawsuit Regarding the Easement*

The Jayaweeras own real property located on Alpen Drive, Lake Arrowhead, San Bernardino County, California (lot 264).  The Lansbergs own adjoining property on Alpen Drive (lot 263).

In 2001, the Jayaweeras sued Lake Arrowhead Building Company (LABC), which previously owned lot 263, for injunctive relief and damages.  They alleged in their first amended complaint that a "roadway easement" existed on lot 263, providing access to lot 264.  In 2001, the Jayaweeras discovered LABC "constructed or caused to be constructed a residential building structure over the road easement . . . or over the paved road which is or was believed to be located on said road easement which has for at least ten (10) years provided an access to the [Jayaweeras' property]."  The Jayaweeras sought exemplary damages "because [LABC] proceeded to construct the residence over the top

---

[1] We sometimes refer to the parties by their first names to avoid confusion, and not out of disrespect.

2

of the easement and/or paved road which has served as the access for the easement and did demolish and remove the roadway with willful and conscious disregard of [the Jayaweeras'] rights."

*Settlement Agreement*

In 2003, the Jayaweeras and LABC settled the first lawsuit, and the Jayaweeras signed an agreement stating:  "LABC will construct an asphalt paved 4[-]foot wide bicycle and foot path on the Private Road Easement located on Lot 263.  The path will connect [the Jayaweeras'] existing asphalt driveway with the existing asphalt road on Lot 262.  The construction will include a retaining wall and will be as level as possible as allowed by the typography [*sic*].  LABC will obtain all required ingress and egress rights and all required permits."

The settlement agreement is critical to the present case; therefore, we quote it at length:

"In exchange for the parties hereto, and each of them, do hereby for themselves and their executors, legal successors, assigns, agents, employees, officers, directors, co-owners and shareholders release and absolutely discharge each other party hereto and their respective executors, legal successors, assigns, agents, employees, officers, directors, co-owners and shareholders of and from any and all claims, demands, damages, debts, liabilities, accounts, obligations, costs, expenses, actions and causes of action of every kind or nature, whatsoever, whether known or unknown, suspected or unsuspected, which they, and each of them, have or hold, or at anytime heretofore had, owned or held, against the other parties hereto, and each of them, so that no party hereto shall have any

3

claim of any nature or kind whatsoever arising out of any or all of the matters, facts, events or occurrences alleged or referred to, or arising out of the transaction that resulted in the DISPUTE, or otherwise." [¶] . . . "The parties hereto, and each of them, are aware of the fact that it is their respective intentions in accepting the consideration provided for herein that this Agreement shall be effective as a full and final accord and satisfaction and settlement of, and as a bar to each and every claim, demand, debt, account, reckoning, liability, obligation, cost, expense, lien, action and cause of action, heretofore referred to and released, which the parties hereto have, may have, or have had, against the other party in connection with the DISPUTE.  Each party hereto acknowledges that he has been informed by his own attorney, and that he is familiar with Section 1542 of the Civil Code of the State of California which provides as follows:  [¶]  A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH, IF KNOWN BY HIM, MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR." [¶] . . . The parties hereto, and each of them, hereby waive and relinquish all rights and benefits they have or may have under Section 1542 . . . In connection with such waiver and relinquishment, the parties hereto, and each of them, acknowledge that they are aware that they or their attorneys may hereafter discover facts different from or in addition to those which they or their attorneys now know or believe to be true with respect to the DISPUTE, but that it is their intention that this Agreement remain in effect as a full and complete general release, notwithstanding any such different or additional facts." [¶]  "The provisions of this

4

Agreement shall be deemed to extend to the benefit of (in addition to each of the parties hereto) each and all of the principals, officers, directors, agents, executors, employees and attorneys of each of the parties hereto, and to the benefit of the parent, subsidiary, and affiliated companies of the parties hereto and the officers, directors, agents, employees, and attorneys of each such parent, subsidiary and affiliate company, and their respective legal successors and assigns."

*The Jayaweeras' Present Lawsuit*

In 2011, the Jayaweeras filed the operative first amended complaint for quiet title and interference with easement, alleging: "This action concerns and affects title to and [the Jayaweeras'] right to use an interest in real property situated in the County of San Bernardino, State of California, consisting of a recorded private road easement serving [the Jayaweeras'] property, as shown in the map for Tract 7074, Arrowhead Woods Tract Number 103, recorded in the official records of the County of San Bernardino, State of California, in Map Book 91, pages 12 through 18, inclusive, which [the Jayaweeras] are informed and believe and based thereon allege was recorded on or about May 6, 1964. Such easement burdens the northerly 20 to 30 feet of [the Lansbergs'] property."

Without referring to the settlement agreement, the Jayaweeras allege "[t]he subject easement has not been abandoned, nor have [they] voluntarily relinquished any right to the use and enjoyment of the subject easement."

Regarding their cause of action for quiet title, the Jayaweeras alleged: "In or about late 2007, [the Lansbergs] constructed improvements on their property consisting of staircases, ramps, landings, and/or decking which encroached into, over and upon the

5

subject easement, interfering with [the Jayaweeras'] use and enjoyment thereof. [The Jayaweeras] are informed and believe and based thereon allege that such construction was undertaken without obtaining appropriate and necessary permits, without the approvals of the applicable building officials, without prior notice to [the Jayaweeras], and was done without [the Jayaweeras'] permission or consent. [The Jayaweeras] are further informed and believe and based thereon allege that the County of San Bernardino has issued to [the Lansbergs] a citation and/or notice to correct the unpermitted construction. [The Jayaweeras] are informed and believe that [the Lansbergs] have failed to comply with same."[2]

In their second cause of action, the Jayaweeras alleged the Lansbergs "willfully and intentionally interfered with [the Jayaweeras'] use and enjoyment of the subject easement . . . by erecting and maintaining improvements thereon which encroach onto the easement and preventing or otherwise interfering with [the Jayaweeras'] reasonable use of and access across such easement."

---

[2]     In 2004, the court denied LABC's motion to enforce the settlement, ruling: "[LABC] did not comply with its obligations pursuant to the agreement, 1) to construct the bikeway out of asphalt; 2) to construct a bikeway which is four feet wide; 3) connect [the Jayaweeras'] driveway with the easement on Lot 263; 4) to place such bikeway on the private road easement on Lot 263." Jayaweera admitted at trial that after the agreement was signed, he did not take legal action to ensure LABC complied with the settlement agreement.

6

*The Lansbergs' Cross-Complaint*

The Lansbergs filed a cross-complaint alleging causes of action for quiet title and declaratory and injunctive relief. They alleged their house "sits on a steep incline, and the bottom two stories of the house are below the level of Alpen Drive. A level driveway connects Alpen Road to the third story of [their] house. A three-story staircase connects [their] front walk on the ground floor of the house to the driveway at street level." The Lansbergs further alleged the Jayaweeras' claimed road easement exists between their two houses where the staircase was built, and the Jayaweeras "seek to grade the steep incline and construct a road adjacent to [the Lansbergs'] home, underneath their driveway and in the location where the staircase lies."

The Lansbergs alleged they were unaware of the existence of the claimed road easement; it was not disclosed on their title report when they purchased their property, and any easement was extinguished by abandonment or by end of necessity. The Lansbergs specifically refer to the agreement as having resolved the prior lawsuit, noting that "no easement was recorded on title to the Lansberg Property as part of that settlement."

The Lansbergs sought injunctive relief, alleging that if the Jayaweeras' claim for a roadway easement were granted, it would "cause grave and irreparable injury to [the Lansbergs] in that they will lose use of their staircase, have grading done and have a road built immediately in front of their house and underneath their driveway in a manner which could render the entire hill unstable."

7

*Asoka Jayaweera's Trial Testimony*

At the one-day bench trial, Asoka represented plaintiffs and was the sole witness for his side. His testimony relied on the following documents introduced into evidence: a copy of the settlement agreement in the first lawsuit, a recorded tract map, the Lansbergs' grant deed, and various photographs of the stairways built on the Lansbergs' property.

The court questioned Asoka regarding his understanding of the settlement agreement's terms. Asoka replied as follows: "I was not going to dispute that case anymore for them building over the road because I realized I did not have a recorded right to that easement. It wasn't used, but it was not the recorded easement." The court clarified, "[P]rescriptive easement. You gave up the right to that easement that wasn't recorded but just from one you believe you got from the use; correct?" Asoka replied, "Right. Yes, your Honor." Asoka explained that in exchange LABC was required to build a bike path but never completed it, adding, "There was no time limit, and if they don't build it, I can build it, and they have to give up the money they had to put in as a bond to the court."

The court asked Asoka to identify the "expressed easement" at issue in this case. Asoka referred to a tract map that states, "BSL private road easement." He testified the Lansbergs "built a large staircase structure that completely obstructs any use of the easement. For me to even walk on it I have to duck under their staircases. There are about four of their stairways going across the easement."

On cross-examination, Asoka testified that in his first lawsuit he had alleged he had the right to a recorded roadway easement and a separate prescriptive roadway

8

easement. He also admitted he had described the recorded roadway easement in the same terms in both lawsuits. Asoka stated he knew about the recorded easement's existence since at least 1999, but he had taken no steps to develop it, in part because it would be costly.[3]

Asoka described the recorded easement as being a hill, and stated that for it to be useable to ride a bicycle, the pathway that was part of the settlement would have to be built. Asoka stated he had ridden his bicycle on lot 263 "maybe four, five times," but he had not driven a vehicle over the hill. Asoka testified he did not "absolutely need" the road easement because he has a direct path on Alpen Drive to his property.

On cross-examination, defense counsel asked Asoka: "Now, as I understand the staircase it does not interfere with anybody walking on . . . the pathway, does it?" Asoka responded: "When you say pathway, we are talking about the pathway that's supposed to be on the recorded easement. There's nothing that can go on the recorded easement. There is no pathway on the recorded easement. The pathway that the [LABC] built was not on the recorded easement." When pressed, Asoka admitted the stairways did not interfere with the pathway, which he described as a "small skirt outside the building but not in the recorded easement. On the small skirt, about three feet wide with many angles, you can walk. Mostly it's hugging . . . the house, but that is not the pathway. That is not where the pathway is supposed to be."

---

3    The court made a finding that "to put a road in there it would be a substantial expense, if it was possible at all."

The parties stipulated that if Shantha Jayaweera had testified, she would have stated: "[S]he has no knowledge of any of the facts alleged in the action; had no knowledge of any of the filing of the prior action against LABC; that [Asoka] Jayaweera signed the settlement agreement in the prior action on her behalf. She has never used the Lansberg property for any purpose. And . . . [the Jayaweeras] cannot afford to build a road across the Lansberg property."

*Defense Trial Testimony*

John Wurm, LABC's attorney in the first lawsuit, drafted the settlement agreement. He was called as a witness for the Lansbergs, and testified the issue in the first lawsuit involved two easements: "a roadway easement as provided in the tract map and also . . . a prescriptive type easement." Attorney Wurm testified that in entering into the settlement agreement, LABC's intent was "to preserve [the Jayaweeras'] easement rights over lots 262, 261 and 260. So in other words [the Jayaweeras] still would have whatever rights they had for ingress and egress on the private road easement as existed prior to the settlement. What the settlement modified was that instead of perhaps vehicular rights over [lot] 263, now the [Jayaweeras] only had rights for bicycle and pedestrian access. And the LABC built a concrete pathway approximately four feet wide to accommodate the pedestrian and bicycle access." Attorney Wurm added: "[T]he private road easement which was recorded by the tract map prior to the settlement agreement was replaced by an easement for . . . pedestrian and bicycle access on a four-foot wide concrete pathway that went underneath the parking deck driveway. And I believe it was within the previously recorded private road easement and that the

10

settlement was intended to be that [the Jayaweeras were] giving up all other rights except the pathway."

On cross-examination, Attorney Wurm testified that the house LABC built on lot 263 did not obstruct the recorded easement: "[LABC] built up to the recorded easement and then the private—and then the parking deck driveway spanned the recorded easement suspended in the air from the residence to Alpen Drive." He testified LABC's motion to enforce the settlement was denied because the pathway was made out of concrete instead of asphalt.

Justin Lansberg testified that in 2007, he and Stephanie Lansberg bought lot 263 from Dan Dorf and Stella Dorf. When the Lansbergs were in the process of purchasing the property, they learned there was a walkway easement on the property. Justin testified in reference to photographic evidence that: "There is a pathway that runs across the length of the property and conforms roughly to the boundaries of the house, and that was what was told to [me] was the walkway that had been constructed specifically because of the settlement and it exists." Further, the stairways did not interfere with the use of the pathway. Justin, who is taller that Asoka, had walked the pathway numerous times without hitting his head, and his children had ridden scooters on it a few times. Justin testified his hired builders did not obtain the proper permit before building the stairways.[4] Justin understood that in the present case, the Jayaweeras were seeking to

_____

4    The Jayaweeras submitted into evidence a September 2008 "notice of action on real property" issued by the San Bernardino County Recorder, stating that "unlawful conditions" existed on the Lansbergs' property, and requiring the Lansbergs to obtain a

build a vehicle-ready road under the Lansbergs' driveway because the Jayaweeras claim that area as their private road easement.

*Closing Arguments*

Asoka Jayaweera argued that the Jayaweeras had a "recorded expressly granted easement," which they had not abandoned. The court told him that in its view, this case turned on "whether or not there was an agreement [for the Jayaweeras to] basically accept a walking path as opposed to a driving road in the prior litigation and whether or not you have waived rights to enforce that." The court also told Asoka that a recorded easement "can be lost, however, if there is some action taken by the subservient tenant to—that somehow interferes with the potential use of that area that is adverse." The court next asked Asoka, "And doesn't the construction of the driveway of the garage [effectively] prevent it from its use?" Asoka responded, "It did not because we had plans drawn up. There was a height of more than 12 feet from the highest part of the access to the garage from the ground level. The lowest was about four feet, but all the engineers have said . . . you can build a road there. Sure, it may be costly, but you can build a road there. [¶] And so I haven't shown any intent to abandon that easement." Asoka added, "All [Lansbergs'] arguments rest on [is] this fact that [the easement has] not been used; it's steep; it's not necessary; and initially it's not recorded. So all those are not necessary for me to preserve that easement. I may keep it like that for a hundred years. I don't have to do anything with it. It does not go away from the recording."

permit for stairs built without permit, provide proof of abandonment of easement, obtain required permits, call for inspections, obtain final approval, and pay all enforcement fees due.

12

Defense counsel argued the evidence showed the Jayaweeras had "at best an expressed easement by implication. There's no express grant." The court asked defense counsel, "If I conclude that, in fact, there was an easement—a road easement that existed and that as a result of the first case that, in fact, there was a settlement in which the case can act as a transportation of the road easement into a bicycle foot path easement, how does that affect your argument?" Defense counsel replied, "[I]t would extinguish the easement shown on the tract map because there is no road easement. All they have is a contractual claim against LABC to enforce an easement for a walkway. [The Lansbergs have] never interfered with that. I mean, the walkway is there. They have not said don't walk on my property. So they've not done anything to interfere with that, but there's no recorded easement."

Defense counsel further argued: "The fact is [the Jayaweeras] agreed to settle [their] claims in the underlying case in exchange for a pathway that [they] could ride on a bike and include a retaining wall. [Asoka's] testimony was [the pathway was] done not to his satisfaction. He wanted it all on the recorded easement. What's important about that is he wanted it all on recorded easement shows that it was an exchange for the record easement because why would you put a retaining wall and a pathway on the recorded easement unless you were giving up the right to put a vehicle on that roadway? It makes no sense. [¶] If you wanted to preserve a roadway easement, he would put it off the roadway, but he didn't, and that was their agreement."

The court asked defense counsel: "How do [the Lansbergs] get around the fact that in [the] settlement agreement there's specific language that says this is not interfering

13

with that easement?"  Defense counsel replied:  "Well, if we took that to mean all of [the Jayaweeras'] easement rights, then they settled nothing because the lawsuit was only about [their] easement rights."  The court added, "I have some problems with the language [of the agreement]."

The court noted:  "But the pathway . . . as actually built did not infringe on the area that was encompassed by the easement as recorded."  This exchange ensued:

"[Defense counsel]:  Well, it is, parts of it as you see in that diagram.

"The Court:  Very small part.

"[Defense counsel]:  Yes, parts of it, but it went around the end of the house which is the only place it could go.

"The Court:  I understand that, but it didn't go into the area where [the Jayaweeras] wanted it on the easement itself which is—

"[Defense counsel]:  You know, that was their agreement.  . . .  [¶]  I mean the agreement doesn't make a lot of sense.  It's ambiguous.  It's not clear.  But what is clear is that it was a release of all claims because if you look throughout of it [*sic*], it's clear they released all claims in this action.  And I mean, it talks about in paragraph four it is a full and final accord, [Civil Code section] 1542 waiver."

"The Court:  But there's no indication in the settlement agreement that [the parties will] file anything that would extinguish the recorded easement.

"[Defense counsel:]  They didn't even mention they would record this document.

"The Court:  I understand."

14

Defense counsel added, "And then there was a [contention] that LABC did not comply. But how do we impact on that? And I don't think we impact on that. It's not a recorded title, recorded document, and that's the whole point of transfer of real property. They should have recorded something if that's what they were intending to convey. [¶] I mean, they both had counsel so . . . nobody paid attention and nobody did anything when there was a failure to comply."

Defense counsel also argued in relation to the trial evidence that the Jayaweeras had lost their right to any easement either by abandonment or by a lack of necessity.

*The Court's Rulings Against the Jayaweeras*

The court denied the Jayaweeras' claim for a roadway easement as set forth in the first amended complaint, ruling: "[T]he alleged easement does not exist and . . . the [Lansbergs] are the owners of the subject property free and clear not encumbered with the alleged easement effective as of the date of the filing of the cross-complaint. [¶] The Court declares that the [Lansbergs] are entitled to the full use and enjoyment of the Lansberg Property, further, that there is no recorded easement in favor of the Jayaweera Property for a road burdening the Lansberg Property and any easement for a road burdening the Lansberg Property has been extinguished."

The final judgment is in accord with the court's ruling: "The Plaintiffs, the Jayaweeras, have not established the First Cause of Action for Quiet Title to a Recorded Easement or the Second Cause of Action for Interference with Easement alleged in the First Amended Complaint." The court denied the Jayaweera's request for an injunction and damages. The judgment states: "The Lansbergs have established the First Cause of

15

Action for Quiet Title, the Second Cause of Action for Declaratory Relief and the Third Cause of Action for Injunctive Relief alleged in their Cross-Complaint. . . . [¶] . . . the Lansbergs[] shall have Judgment confirming that the alleged easement claimed by . . . the Jayaweeras, does not exist and that the Cross-Complainants are the owners of the Lansberg Property free and clear and not encumbered with the alleged easement effective as of the date of the filing of the Cross-Complaint. [¶] The Court declares that: (a) the [Lansbergs] are entitled to the full use and enjoyment of the Lansberg Property; (b) that there is no recorded easement in favor of the Jayaweera Property for a road burdening the Lansberg Property; and (c) any easement for a road burdening the Lansberg Property has been extinguished."

The court denied the Jayaweeras' motion for a statement of decision as untimely. It denied their motion for reconsideration as presenting no new facts or issues. The court denied the Jayaweeras' new trial motion, finding the verdict was supported by sufficient evidence and there were no irregularities in the proceedings.

DISCUSSION

I.

A.

Because the trial court did not prepare a statement of decision, the Jayaweeras contend its ruling failed to define the type of easement that was created and existed on lot 263 due to the filing of the tract map; ascertain whether the easement was properly recorded; resolve what easement rights were extinguished or how they were extinguished; and decide whether any easement rights existed on the Lansbergs' property

16

following the parties' settlement agreement. They further contend, "The Trial court is without any basis, reasoning, or expressed statement of decision as to what evidence he used, to conclude that the settlement agreement transported the road easement into a bicycle foot path easement." The Jayaweeras contend they always had a recorded easement, which could not be extinguished by the settlement agreement.

In denying the Jayaweeras' posttrial request for a statement of decision, the court stated: "The trial was less than eight hours in length. The request has to be made before submission of the matter for decision pursuant to [Code of Civil Procedure section 632 and Rules of Court, Rule No. 3.1590]. So I don't intend to do a statement of decision."

The Jayaweeras do not challenge the correctness of the trial court's ruling that they failed to timely request a statement of decision, and they provide no citation to the record and applicable law to support their claims the court's ruling was insufficiently detailed. Therefore, we regard all of the Jayaweeras' challenges to the language of the court's ruling as forfeited. We address the Jayaweeras' arguments regarding the sufficiency of the evidence, and turn to the record to verify whether substantial evidence supports the trial court's decision.

*Applicable Law*

"The doctrine of implied findings requires the appellate court to infer the trial court made all factual findings necessary to support the judgment. [Citation.] The doctrine is a natural and logical corollary to three fundamental principles of appellate review: (1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the appellant bears the burden of providing an

adequate record affirmatively proving error." (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58.) "Securing a statement of decision is the first step, but is not necessarily enough, to avoid the doctrine of implied findings. Litigants must also bring ambiguities and omissions in the statement of decision's factual findings to the trial court's attention—or suffer the consequences." (*Id.* at p. 59.)

"Settlement agreements . . . are construed under the same rules that apply to any other contract." (*In re Tobacco Cases I* (2010) 186 Cal.App.4th 42, 47.) "Interpretation of a contract, including resolution of any ambiguity, is solely a judicial function. [Citation.] The primary goal of contract interpretation is to give effect to the mutual intent of the parties." (*Villacres v. ABM Industries, Inc.* (2010) 189 Cal.App.4th 562, 598 (*Villacres*).) When possible, we glean the parties' intent solely from the written provisions of the contract. (*Ibid.*) "Specific language must be interpreted in context and with regard to its intended function and the structure of the agreement as a whole." (*Ibid.*) The interpretation of an unambiguous contract is a matter of law for this court's independent determination. (*State Farm Fire & Casualty Co. v. Lewis* (1987) 191 Cal.App.3d 960, 963.)

*Analysis*

We preliminarily note that the Jayaweeras had the burden of proving they owned the claimed recorded easement. (Evid. Code, § 500; *Beck Development Co. v. Southern Pacific Transportation Co.*(1996) 44 Cal.App.4th 1160, 1205 ["Accordingly, in order for the plaintiff to prevail the record must contain sufficient evidence to support a finding in its favor on each and every element which the law requires to support recovery.

18

[Citation.] No matter how overwhelming the proof of some elements of a cause of action, a plaintiff is not entitled to a judgment unless there is sufficient evidence to support all of the requisite elements of the cause of action."].) But the Jayaweeras did not submit into evidence their recorded grant deed or any other recorded grant or reservation of easement for the benefit of lot 264 over lot 263, despite claiming they had a recorded easement over lot 263. Accordingly, we conclude the Jayaweeras failed to make out their cause of action for a recorded easement.

B.

Nevertheless, we have a separate basis for affirming the trial court's ruling. We imply from the court's comments at trial that it relied on the settlement agreement in concluding the Jayaweeras' right to a claimed roadway easement was extinguished in favor of the four-foot pathway. We conclude the settlement agreement supports the court's finding. In light of the fact the parties intended final resolution of their dispute over the easement on lot 263, paragraph No. 3 of the agreement provides the sole means of redress, requiring LABC to build a retaining wall and a pathway to allow bicycle and pedestrian access over an easement located on Lot 263 that would connect the Jayaweeras' driveway to an existing asphalt road on Lot 262. Justin testified the pathway and retaining wall were built and it was walkable. Asoka testified a pathway was built, and the stairways did not interfere with his ability to walk on the pathway. The parties stipulated Shantha had not used the pathway. Therefore, we conclude the retaining wall and pathway were built in response to the Jayaweeras' first lawsuit and pursuant to the settlement agreement.

19

To the extent the Jayaweeras seek to support their claim they did not abandon the easement by relying on LABC's apparent failure to build the pathway according to the agreement's specific terms and the fact that the San Bernardino County Recorder requested the Lansbergs provide proof of abandonment, those issues are immaterial for our resolution of this case. Neither matter vitiated the parties' intent to resolve their dispute through the agreement, whose expansive terms extinguished the Jayaweeras' right to a claimed roadway easement as alleged in the present lawsuit. We note the Jayaweeras had separate remedies in the superior court for the Lansbergs' failure to obtain the permit to build the stairs, and for any failure by LABC to build the pathway according to the agreement's terms. But there is no indication in this record that the Jayaweeras pursued those remedies.

The Jayaweeras have released all claims to additional easements over lot 263. The settlement agreement unambiguously states: "[T]his Agreement shall be effective as a full and final accord and satisfaction and settlement of, and as a bar to each and every claim, demand, debt, account, reckoning, liability, obligation, cost, expense, lien, action and cause of action, heretofore referred to and released, which the parties hereto have, may have, or have had, against the other party in connection with the DISPUTE."

## II.

The Jayaweeras contend a Declaration of Restrictions (the Declaration) did not provide a proper basis for the court to grant attorney fees because the parties did not sue on the Declaration, and the lawsuits did not involve contractual matters. They further contend the Declaration expired in December 2010, and the attorney fee motion was

20

brought in 2012. Finally, they contend the settlement agreement is not a proper basis for the fee award because the Lansbergs were not a party to it.

The Lansbergs respond the Jayaweeras' initial complaint was filed in October 2010, therefore, the Declaration provides a proper basis for an attorney fee award, notwithstanding that the actual fee motion was heard in 2012. They further argue the settlement agreement provided a separate basis for the attorney fee award.

At trial, the Jayaweeras did not dispute the amount of fees sought or who was the prevailing party by citing to the record evidence or applicable law. They merely claimed that the Declaration was not a proper basis for the award, pointing out the Declaration had not been admitted as a trial exhibit or with the attorney fees motion. They also claimed the attorney fee request violated California's Anti-SLAPP laws.[5] The court ruled the lawsuit was brought under the Declaration, which provided a basis for the Lansbergs to be awarded $82,171.25 in attorney fees.

*Analysis*

We need not address the parties' arguments regarding the applicability of the Declaration's attorney fee provision because we affirm the court's ruling on a different basis. We review the correctness of a trial court's result, not its rationale. (*Howard v. Thrifty Drug & Discount Stores* (1995) 10 Cal.4th 424, 443; [" 'We uphold judgments if they are correct for any reason, "regardless of the correctness of the grounds upon which the court reached its conclusion." ' "]

---

5     The Jayaweeras do not renew this claim regarding an anti-SLAPP violation and we do not consider it.

21

We conclude the settlement agreement's attorney fee provision applies in this case because although the Lansbergs were not the defendants in the first lawsuit, the agreement states that its terms extend to the parties' successors and assigns. Therefore, under Civil Code section 1717, the agreement was binding on the Jayaweeras and the Lansbergs, and it provided a proper basis for the attorney fee award.[6]

DISPOSITION

The judgment and order are affirmed. Justin Lansberg and Stephanie Lansberg are awarded costs on appeal.

O'ROURKE, J.

WE CONCUR:

McCONNELL, P. J.

McDONALD, J.

---

[6]     Civil Code section 1717, subdivision (a) states:  "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."  (See *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 128-129 [interpreting Civil Code section 1717].)